# Exhibit B

This case has been designated as an eFiling case. To review a copy of the
Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/Pages/efiling.

## STATE OF MICHIGAN
### IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

AMAR TOMA, an individual,

    Plaintiff,

          2017-159528-CB

    v

          Case No. 2017-    -CB
          Hon. JUDGE ALEXANDER

THE HUNTINGTON NATIONAL BANK,
A national banking association, and
SCOTT WOLFFIS, an individual,

    Defendants.

_____/

COHEN, LERNER & RABINOVITZ, P.C.
By:    Steven Z. Cohen (P29344)
        Aaron S. Silvenis (P75889)
Counsel for Plaintiff Amar Toma
26862 Woodward, Ste. 200
Royal Oak, MI 48067
(248) 691-2200 / (248) 691-2214 Fax

SUMMERVILLE LAW FIRM, PLLC
By:    T.L. Summerville (P63445)
Co-counsel for Plaintiff Amar Toma
26862 Woodward Avenue, Suite 200
Royal Oak, MI 48067
(248) 537-9394 / (248) 560-1706 Fax

_____/

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, AMAR TOMA, by and through his attorneys, COHEN,

LERNER & RABINOVITZ, P.C., and for his Complaint against the above-named Defendants,

states as follows:

### NATURE OF THE CASE

1.    This is an action for damages and equitable relief arising from Defendant The

Huntington National Bank's ("Defendant" or "Huntington") bad faith refusal to honor a

Received for Filing Oakland County Clerk 6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C. 200 BEACON CENTRE, 26862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C. 200 BEACON CENTRE 26862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0659 • (248) 691-2200 • FAX (248) 691-2214

commitment letter for a $5 million loan it issued in 2014 to plaintiff Amar Toma ("Plaintiff" or "Toma").

2.  Toma sought the loan as part of his efforts to purchase the interests of his former business partner, Sarmad Shayota ("Shayota"), in a company they owned together, PCS Experts, Inc.

3.  At the time he applied for the loan, Toma disclosed to Huntington that he and Shayota were involved in contentious litigation affecting PCS Experts, but had agreed to an auction where the higher bidder would acquire the other's interests.

4.  Although the litigation and the auction were fully disclosed to Huntington, months after issuing the loan commitment letter, it reneged on its written promise, falsely claiming that the litigation between Toma and Shayota had not been previously disclosed.

## PARTIES, JURISDICTION, AND VENUE

5.  Amar Toma is a resident of the Township of Shelby, County of Macomb, State of Michigan.

6.  Huntington is a national banking association, having its principal place of business in Columbus, Ohio.

7.  Upon information and belief, Defendant Scott Wolffis, is a resident of the Township of Shelby, County of Macomb, State of Michigan.

8.  Venue is proper before this Court because all or part of the events giving rise to this action occurred in Oakland County.

9.  Jurisdiction is proper because the amount in controversy exceeds $25,000.00, exclusive of costs and interest, and this action invokes the equity jurisdiction of the Court.

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C.  220 BEACON CENTRE, 26862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

## FACTUAL OVERVIEW

### Toma Seeks to Acquire His Business
### Partner's Interest in PCS Experts, Inc.

10.     In February 2007, Toma and Shayota, his former business partner, formed PCS Experts, Inc. ("PCS"), a Michigan corporation, primarily for the purpose of selling cellular phone subscription plans, cellular phones and other mobile devices, and accessories for those phones and devices; Toma and Shayota were the only two shareholders of PCS.

11.     PCS was the parent corporation for several subsidiaries that sold cell phones, plans, and merchandise directly to consumers.

12.     Toma and Shayota successfully and profitably conducted business together until March 2012 when a series of incidents involving Shayota at certain PCS locations led to a breakdown of their business relationship.

13.     In late March 2012, as tensions reached a boiling point, Toma, Shayota, and their respective attorneys met to discuss options to resolve their disputes.

14.     Among the options considered were (i) reconciling and continuing to do business together, (ii) participating in a buy-sell arrangement with an agreed upon price at which one party could either buy the other's interest in PCS, and (iii) litigation, if all else failed.

15.     The discussions to resolve the disputes between Toma and Shayota continued for approximately two years.

16.     Realizing that they could not continue doing business together, Toma and Shayota became involved in litigation.

17.     In an effort to resolve their litigation, Toma and Shayota agreed to participate in an auction whereby the higher bidder would acquire the other's interest in PCS.

3

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C.  200 BEACON CENTRE, 26862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0759 • (248) 691-2200 • FAX (248) 691-2214

18.     In the Summer of 2014, Toma, hoping to acquire Shayota's interest in PCS, contacted Huntington to inquire about securing a loan so that he could purchase Shayota's interest at the agreed upon auction.

19.     Toma was directed to Ryan Kroge ("Kroge"), Vice President and Senior SBA/USDA Specialist at Huntington and explained that he needed funding so that he could purchase Shayota's interest in PCS at the auction.

20.     On August 6, 2014, Kroge provided Toma with a preliminary term sheet (the "Term Sheet") in which Huntington proposed lending $5,000,000.00 to Toma upon the terms specified therein. (A copy of the Term Sheet is attached as **Exhibit A.**)

21.     As part of the loan application process, Huntington required Toma to prepare and submit a series of documents concerning the nature of the loan request, including but not limited to: a business plan; balance sheets, income statements, profit-loss statements, and other financial records for PCS; a detailed history of his business relationship with Shayota; and statements identifying the respective ownership interests Toma and Shayota held in PCS and its subsidiaries (the "Supporting Loan Documents").

22.     Toma provided the Supporting Loan Documents to Huntington starting in mid-August 2014.

23.     As part and parcel of its due diligence, Huntington thoroughly analyzed the financials of PCS, as well as the overall operations of the respective entities that made up the PCS conglomerate.

24.     Not long after Toma began providing the Supporting Loan Documents, Huntington made additional requests for the balance sheets for the PCS subsidiaries and

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C.  200 BEACON CENTRE, 26862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

information concerning potential acquisitions and mergers/alliances that had been identified as beneficial for PCS's business operations going forward.

25. Toma continued to comply with Huntington's many requests for information.

### Huntington Issues a Commitment Letter to Toma For a $5 Million Loan

26. In late October 2014, Kroge informed Toma that Huntington would be making a decision on his loan application in the near future.

27. On November 2, 2014, Kroge informed Toma by email that his application for the Loan "ha[d] been approved and should be finalized today" and that a commitment letter was expected within 24 hours.

28. On November 7, 2014, Huntington forwarded a commitment letter for the Loan to Toma.

29. The commitment letter, which Kroge signed in his capacity as a vice president with Huntington, required Toma to make a payment of $10,000.00 to be used for loan fees and "third-party reports" and return a signed copy within 2 days as a condition to indicating his agreement.

30. On November 7, 2014, Toma executed the Huntington commitment documents and made the $10,000.00 payment via wire transfer/certified check. (See **Exhibit B** for a fully executed copy of the Commitment Letter.)

31. On November 12, 2014, after having received the executed commitment documents and the $10,000.00 payment, P. J. Parsons ("Parsons"), an underwriter with Huntington, forwarded a list of closing items Huntington needed from Toma in order to consummate the Loan.

5

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C. 200 BEACON CENTRE, 26862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

32.    Parsons also directed Toma to fill out a personal financial statement as a condition to closing the Loan with Huntington.

33.    Parsons (or Kroge) also advised Toma that Huntington would be obtaining a business valuation for PCS as part of the loan approval process.

34.    In December 2014, Toma and Mark Morrison ("Morrison"), a friend and experienced commercial loan officer for another bank, contacted Huntington regarding the status of an approved valuation for PCS Experts.

35.    Kroge, on behalf of Huntington, advised them that the valuation was "being reviewed internally and came in a hair under $15[ million]." (See **Exhibit C**).

36.    Toma continued to provide Parsons and Kroge at Huntington with the information they requested throughout the months of December 2014 and January 2015.

**Huntington Begins to Erect
Barriers to Closing the Loan**

37.    On January 8, 2015, Morrison informed Huntington that the auction had been scheduled to take place on March 30, 2015.

38.    Shortly thereafter, on January 8, 2015, Huntington advised Toma of a series of "outstanding issues" that needed to be addressed before the date of the auction.

39.    One of these issues concerned an assignment provision within a licensing agreement between PCS and Sprint.

40.    Huntington advised that assignment language needed to be modified to conform to SBA guidelines.

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C.   200 BEACON CENTRE   26862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

41.     Huntington also required Toma to engage an accounting firm, UHY, to prepare PCS's 2014 year-end financial reports and amend certain historical financial statements to exclude certain PCS subsidiaries that had been sold could be excluded.

42.     Also on January 8, 2015, in response to Huntington's concerns about the Sprint Agreement, Morrison emailed Kroge and sought clarification of Huntington's specific concern.

43.     After a terse exchange over whether the Sprint Agreement was a franchise agreement, Morrison sought further clarification from Kroge and Huntington, writing:

> I am trying to understand the risk of the current [assignment] language in the [Sprint Agreement] to Huntington Bank.  Per my review PCS Experts can't have a change in control, name, etc. without the approval of Sprint in advance.  I would assume your loan documents will have the same language to protect Huntington Bank.

(See **Exhibit D**).

44.     In response, Kroge insisted that the assignment language was "not eligible under SBA guidelines and has been amended on other licensee agreements in the past by district representatives."  (See **Exhibit D**).

45.     Kroge's and Huntington's insistence on altering the Sprint Agreement put Toma in a difficult position and threatened to jeopardize the deal/the auction.

46.     Huntington's requests essentially required Toma, within a short window of time and before the auction, to secure Sprint's approval to amend the assignment language so that Huntington would consummate the Loan, despite having earlier approved it.

47.     Kroge, on behalf of Huntington, continued to employ a hardline "all-or- nothing" end game in response to follow-up questions from Toma's camp regarding how this deal could done in a flexible fashion.

Received for Filing Oakland County Clerk 6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C. 200 BEACON CENTRE, 26862 WOODWARD AVENUE · ROYAL OAK, MICHIGAN 48067-0959 · (248) 691-2200 · FAX (248) 691-2214

48.     After Morrison questioned whether the change was necessary, as it might require Shayota's agreement, which would not likely be forthcoming, Kroge insisted that Toma comply, saying: "Then the deal doesn't happen. This is not a negotiation and was discussed prior to approval." (See **Exhibit E**).

49.     The next day, January 9, 2015, Joseph Viviano ("Viviano"), an attorney representing Toma at the time, informed Kroge that Toma's financing source for the auction, i.e., Huntington, had been inadvertently disclosed to Shayota and his attorney, David Senawi, in late November 2014 as part of an ongoing facilitation process between the parties. (See **Exhibit F**.)

50.     As the date of the auction grew closer, the extent of Huntington's demands increased while its overall commitment to financing the deal seemed to diminish.

51.     On January 13, 2015, Kroge informed Toma that Huntington would need compiled financials from UHY through the month of November 2014. To this end, Kroge indicated "October will not get you a reapproval as it will be over 90 days when we close." (See **Exhibit G**).

52.     In response, Morrison, on behalf of Toma, wrote:

> Technically we would only need October as of today but I would hope that Huntington Bank could review the revised information internally and get a feel for a revised commitment letter. Yes we agree that you will need the October number to finalize your updated commitment letter. Let me know your thoughts as this is critical for timing.

(See **Exhibit H**).

53.     Kroge dismissed Morrison's request, indicating "We will not revise unless the financials are in hand within the 90 days of closing." (See **Exhibit H**).

8

54.     At the same time that Huntington was demanding revised financial reports, Toma was working to, and did, resolve the assignment language issue affecting the Sprint Agreement.

55.     Toma and Sprint agreed to language that Kroge advised was "sufficient" for Huntington's lending purposes. (See **Exhibit I**).

56.     On January 14, 2015, representatives from Huntington met with Toma and Morrison to discuss the outstanding issues Huntington was now requiring as a precondition to closing the Loan.

57.     At this point in time, Huntington requested that Toma forward updated revised financial statements to Rob Taylor of the accounting firm Taylor & Morgan, CPA, PC, so that Taylor could update Huntington's business valuation of PCS in view of eight locations that had been sold and removed from the overall business operations.

58.     On January 19, 2015, UHY forwarded the updated Combined Compiled Financial Statements Year-to-Date October 2014 to Toma and Morrison.

59.     Later that same day, Morrison emailed the updated financial statements and an "updated Debt Service Coverage cash flow template to confirm cash flow[,] which is still strong" to Kroge and asked that Kroge "call or email [him] with questions or concerns as [Kroge's] timing [was] critical to receive an updated Commitment Letter."

60.     On January 20, 2015, Morrison contacted Huntington seeking assurance as to Huntington's commitment to get the deal done. (See **Exhibit J**).

61.     Among other things, Morrison asked Kroge to confirm that he had sent the revised financial reports so that the business valuation could be revised to match the assets Toma intended to purchase from Shayota at the auction. (See **Exhibit K**).

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C. 2i BEACON CENTRE, 26842 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C. 200 BEACON CENTRE 26862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

**The Court-Ordered Auction and Huntington's**
**Improper Acts to Avoid Closing**

62.     On January 28, 2015, Morrison forwarded to Kroge a copy of an Order entered by the Honorable James Alexander setting forth the procedures, terms and conditions of the auction. Huntington was a recipient of the Court Order and had been previously advised of the status of the litigation that had been pending between Shayota and Toma.  (See **Exhibit L**).

63.     On January 30, 2015, Morrison and Toma learned that the auction had been moved to Wednesday, February 11, 2015; Morrison advised Kroge of the change via a telephone message left that same date.

64.     On February 2, 2015, Morrison again advised Kroge of the auction date and requested that Huntington provide an updated commitment letter before February 11.

65.     Late in the afternoon on February 2, 2015, Kroge advised that Huntington was in the process of completing its work for a new commitment letter:

> The updated business valuation is currently in progress with Rob[]
> Taylor and should be done this week.  Once we get the final purchase
> agreement (or some legal documentation spelling out the transaction
> and dollar amount) we can go to underwriting and request an updated
> commitment letter.

(See **Exhibit M**).

66.     On February 10, 2015, one day before the auction, Huntington emailed Toma to advise that it was withdrawing its commitment:

> This letter is to inform you that due to the continuing dispute between
> you and Mr. Shayota which, previously unknown to Huntington, is
> currently the subject of litigation, as well as your inability to obtain
> an executed purchase agreement for the purchase of PCS Experts,
> Inc. and its affiliates (the "Companies"), Huntington is withdrawing
> its commitment issued to you November 7, 2014.

(See **Exhibit N**).

10

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

LAW OFFICES OF  COHEN, LERNER & RABINOVITZ, P.C.  200 BEACON CENTRE  26852 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

67.     Toma knew the reason Huntington cited in the February 10 email was false because he had informed Kroge about the auction and the underlying litigation in November 2014.

68.     When questioned regarding the rationale for Huntington's abrupt decision to back out a day before the auction was to take place, Kroge responded:

> Regarding the settlement agreement, we cannot be part a sale where the actual sale can revert to the other party, because Huntington is not able to close within a certain time frame.  Basically, Huntington cannot have an impact on the ownership of the company, which is currently what this settlement statement allows.

(See **Exhibit O**).

69.     As a result of Huntington's decision to withdraw the Loan Commitment, Toma was unable to bid at the Auction and protect the value of his interest in PCS.

70.     Shayota purchased Toma's interest for Seven Million Six Hundred Thousand ($7,600,000.00) Dollars, which was well below its appraised value.

**Kroge Exposes Huntington's Bad Faith**

71.     In 2015, Ryan Kroge separated from Huntington Bank.

72.     Subsequently, he contacted Toma and advised that the reasons Huntington cited for not consummating the Loan were false.

73.     Among other things, Kroge informed Toma that Scott Wolffis, Kroge's former supervisor, had solicited a loan application from Shayota not long after Toma had submitted his loan application.

74.     Unbeknownst to Toma at the time, Shayota had submitted an application (the "Shayota Application") for a $5 million loan with Huntington for the purpose of acquiring Toma's interest in PCS Experts.

11

Rece ved for Filing Oakland County Clerk    6/29/2017 9:59 AM

LAW OFF CES OF COHEN, LERNER & RABINOVITZ, P.C.  200 BEACON CENTRE, 26862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

75.    Upon learning of the Shayota Application, Kroge confronted Wolffis and the SBA loan officer assigned to the case and advised that accepting the Shayota Application violated Huntington policy as the two parties were engaged in litigation concerning the purpose of the loan applications.

76.    Undeterred, Wolffis told Kroge that accepting the Shayota Application did not breach Huntington policy and that he was not to have contact with the Huntington employee handling the Shayota Application.

77.    Kroge, however, understood from speaking with another Huntington employee that there was a specific policy addressing the two competing loan applications and that policy barred accepting the second application; this same employee, forwarded a copy of the policy to Kroge via email, using Kroge's Huntington email address.

78.    Kroge again confronted Wolffis about the Shayota Application and the violation of Huntington policy.

79.    Wolffis, who was aware of Toma's application as he was Kroge's supervisor and reviewed his pending loan applications, told Kroge that he should not continue to object to Huntington processing both loans because Huntington would benefit irrespective of whether Toma or Shayota won the auction by closing on a $5 million loan.

80.    Kroge, knowing that processing both loan applications violated bank policy and exposed Huntington to risk, continued to report Wolffis's decision to proceed with the Shayota Application to his superiors.

81.    Eventually, after several meetings, Huntington employees, including Wolffis and Kevin Plaugher, decided that both loan applications should be canceled.

12

Received for Filing Oakland County Clerk 6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C. 200 BEACON CENTRE, 26862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

82.     As Huntington had already issued a commitment letter to Toma, Plaugher instructed Kroge to find reasons that ostensibly would support canceling Toma's loan.

83.     On February 10, 2015, Wolffis presented Kroge with the Cancellation Letter and demanded that he sign and then send it to Toma via electronic, regular, and certified mail; Wolffis threatened that Kroge's employment with Huntington would be terminated if he refused to follow those directions.

84.     Although he knew the Cancellation Letter cited false reasons for not funding Toma's loan, Kroge complied with Wolffis's orders out of fear for his employment.

## COUNT I – BREACH OF CONTRACT
### (Declaratory Relief)

85.     Toma incorporates the allegations of the preceding paragraphs as if fully restated here.

86.     Among other things, Huntington Agreed in the Loan Commitment that it would fund the Loan, which would be guaranteed by the U.S. Small Business Administration. (See **Exhibit B**).

87.     The Loan Commitment provided that approval for the Loan was contingent upon several factors, including the "[SBA's] final approval to guarantee 75 percent of th[e] Loan." (**Exhibit B**, p. 3).

88.     Toma and Kroge agreed that the SBA's approval would not be unreasonably withheld.

89.     In addition, the Loan Condition was subject to "[o]ther [s]pecial [c]onditions," including the receipt and review of a final and executed purchase agreement for a "[m]aximum

13

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C.  200 BEACON CENTRE, 26862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

purchase price of [$]6,500,00" to acquire Sarmad's interest in PCS and a "third party valuation of the acquisition purchase price." (**Exhibit B**, p. 5).

90.     Kroge signed the Loan Commitment in his capacity as a vice president for Huntington.  (**Exhibit B**, p. 7).

91.     Toma signed on behalf of the PCS entities identified in the Loan Commitment.

92.     The Loan Commitment had an effective date of November 7, 2014.

93.     Toma cooperated in good faith with Huntington by disclosing the auction and litigation, participating in securing purchase agreements, and working with accountants selected by Huntington to perform business valuations.

94.     Despite Toma's cooperation, on February 10, 2015, Huntington wrongfully reneged on its promise to consummate the Loan, claiming that Toma had failed to disclose the litigation and would not be able to secure a purchase agreement from Sarmad. (**Exhibit N**)

95.     An actual controversy has arisen and now exists between Toma and Huntington with respect to Huntington's obligations under the Loan Commitment:

   a.     Toma contends that Huntington wrongfully and in bad faith failed to consummate the Loan.

   b.     Huntington contends that it need not have consummated the Loan for alleged failures of conditions precedent.

96.     As a result, Toma seeks a judicial determination respecting Huntington's obligations under the Loan Commitment as follows:

   a.     That the Loan Commitment was a binding and enforceable agreement between Toma and Huntington;

   b.     That Huntington had a contractual duty to consummate the Loan, which Huntington breached when it, in bad faith, withdrew its commitment after falsely claiming that Toma had not disclosed the existence of the

14

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C. 200 BEACON CENTRE, 26862 WOODWARD AVENUE · ROYAL OAK, MICHIGAN 48067-0959 · (248) 691-2200 · FAX (248) 691-2214

Litigation and would not be able to obtain a final purchase agreement from Sarmad; and

c.   That Huntington's breach of the Loan Commitment resulted in monetary damages to Toma in the form of lost profits that he would have earned following the acquisition of Sarmad's interest in PCS.

WHEREFORE, plaintiff Amar Toma prays that this Court enter a judgment in his favor and against Huntington as follows:

A.   Declaring that the Loan Commitment was a binding and enforceable contract between Toma and Huntington;

B.   Declaring that Huntington breached the Loan Commitment when it reneged on its written promise to fund the Loan; and

C.   Granting such further or different relief as the Court deems just and proper.

## COUNT II – BREACH OF CONTRACT

97.   Toma incorporates the allegations of the preceding paragraphs as if fully restated here.

98.   The Loan Commitment was a binding and enforceable contract between Toma and Huntington.

99.   Huntington breached the Loan Commitment by failing to consummate the Loan and falsely claiming that Toma had failed to inform Huntington of the litigation and would not secure a final purchase agreement from Shayota, among other things.

100.   As a direct and proximate result of Huntington's breaches of the Loan Commitment, Toma has suffered and continues to suffer damages, including but not limited to lost income in the form of lost profits from the operation of PCS with Toma as the sole owner, exceeding $25,000.00 exclusive of costs and interest.

15

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C.  203 BEACON CENTRE, 24862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

WHEREFORE, plaintiff Amar Toma prays that this Court enter a judgment in his favor and against Huntington, for the monetary damages proximately caused by Huntington's breaches of contract and award Toma such further or different relief as this Court deems just and proper.

### COUNT III – TORTIOUS INTERFERENCE
### WITH CONTRACT
### (Defendant Wolffis Only)

101.   Toma incorporates the allegations of the preceding paragraphs as if fully restated here.

102.   The Commitment Letter was a binding contract between Huntington Bank and Toma.

103.   Wolffis at all times relevant hereto was aware of the Commitment Letter and knew that Huntington was bound to comply with its terms.

104.   By soliciting and accepting the Shayota Application, Wolffis set in motion a series of events that ultimately led Huntington to wrongfully breach the Commitment Letter, by among other things causing Kroge to send the Cancellation Letter under threat of duress.

105.   Wolffis's conduct in insisting that Huntington Bank could process both loans was contrary to Huntington's policy and otherwise unethical.

106.   As a result of Wolffis's tortious conduct, Toma has suffered and continues to suffer damages, including but not limited to lost income, exceeding $25,000.00, exclusive of costs and interest.

WHEREFORE, plaintiff Amar Toma prays that this Court enter a judgment in his favor and against defendant Scott Wolffis, for the monetary damages proximately caused by his tortious conduct and award Toma such further or different relief as this Court deems just and proper.

16

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C. 200 BEACON CENTRE, 26862 WOODWARD AVENUE • ROYAL OAK, MICHIGAN 48067-0959 • (248) 691-2200 • FAX (248) 691-2214

### COUNT IV – TORTIOUS INTERFERENCE
### WITH BUSINESS EXPECTANCY
### (Defendant Wolffis Only)

107.    Toma incorporates the allegations of the preceding paragraphs as if fully restated here.

108.    Toma had a valid business expectancy with Huntington, i.e., a $5,000,000.00 loan, as evidenced by the Commitment Letter and his communications with Kroge among other things.

109.    Wolffis at all times relevant hereto was aware of the Commitment Letter, Toma's business expectancy, and that Toma had applied for the Loan so that he could purchase Shayota's interest in PCS at the auction.

110.    By soliciting and accepting the Shayota Application, Wolffis set in motion a series of events that ultimately led Huntington to end its wrongfully business relationship with Toma, by among other things causing Kroge to send the Cancellation Letter under threat of duress.

111.    Wolffis's conduct in insisting that Huntington Bank could process both loans was contrary to Huntington's policy and otherwise unethical.

112.    As a result of Wolffis's tortious conduct, Toma has suffered and continues to suffer damages, including but not limited to lost income, exceeding $25,000.00, exclusive of costs and interest.

17

Received for Filing Oakland County Clerk 6/29/2017 9:59 AM

LAW OFFICES OF COHEN, LERNER & RABINOVITZ, P.C. · 200 BEACON CENTRE, 26862 WOODWARD AVENUE · ROYAL OAK, MICHIGAN 48067-0959 · (248) 691-2200 · FAX (248) 691-2214

WHEREFORE, plaintiff Amar Toma prays that this Court enter a judgment in his favor and against defendant Scott Wolffis, for the monetary damages proximately caused by his tortious conduct and award Toma such further or different relief as this Court deems just and proper.

Respectfully submitted

COHEN, LERNER & RABINOVITZ, P.C.

By: /s/ Steven Z. Cohen
    Steven Z. Cohen (P29344)
    Aaron S. Silvenis (P75889)
    Counsel for Plaintiff Amar Toma
    26862 Woodward Avenue, Suite 200
    Royal Oak, Michigan 48067
    (248) 691-2200 / (248) 691-2214 Fax

## DEMAND FOR JURY TRIAL

Plaintiff Amar Toma hereby requests a trial by jury on all issues so triable.

Respectfully submitted

COHEN, LERNER & RABINOVITZ, P.C.

By: /s/ Steven Z. Cohen
    Steven Z. Cohen (P29344)
    Aaron S. Silvenis (P75889)
    26862 Woodward Avenue, Suite 200
    Royal Oak, Michigan 48067
    (248) 691-2200 / (248) 691-2214 Fax

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# A

Received for Filing Oakland County Clerk 6/29/2017 9:59 AM



Welcome:

August 6, 2014

PCS Experts Et. AL.
685 Stephenson Hwy
Troy, MI 48083

Dear Mr. Toma:

Huntington National Bank acknowledges receipt of a preliminary loan package and request to originate the following credit facility for the borrowers listed below. I have reviewed the initial information provided in the request, and it appears that the request has merit. Provided that the information provided in the complete package supports that initial funding, Huntington National Bank is interested in originating the loan under the following parameters:

| | |
|---|---|
| Borrower: | PCS Experts Et. Al. |
| Guarantor: | Amar Toma |
| Loan Amount: | $5,000,000 SBA PLP Term Loan |
| Interest Rate: | Wall Street Journal Prime Rate (currently 3.25%) plus 1.75%, adjusting the first business day of each month. |
| SBA Fee: | $135,000 – Made payable to the U.S. Small Business Administration. |
| Packaging Fee: | $2,000 – Made payable to Huntington National Bank |
| Closing Fees: | $3,000 – Made payable to third party vendors |
| Term: | 120 months term and amortization |
| Prepayment Penalty: | None |

| Use of Proceeds: | Sources: | | Uses: | |
|---|---|---|---|---|
| | SBA Term | $5,000,000 | Partner Buyout | $6,500,000 |
| | Equity | $1,640,000* | SBA Fee | $135,000 |
| | | | Closing Fee | $5,000 |
| | TOTAL: | $6,640,000 | | $6,640,000 |

*Equity may consist of a combination of cash, borrowed funds or seller financing. All sources of equity must be documented and verified.

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

• Page 2                                                             August 6, 2014

Collateral:          First Mortgage and assignment of rents and leases on the land and
                     commercial building located at 865 Stephenson Hwy in Troy, MI

                     Second Mortgage on the personal residence located at 53188 Pondview Dr
                     in Shelby Twp, MI

                     First Mortgage on the vacant lot located in Shelby Twp, MI

                     Best lien position in any additional real estate as a part of this partnership
                     buyout or as owned by the guarantor.

                     All Asset lien on Co-Borrowers

                     Other assets as available for any potential shortfall in the loan request.

Covenants:           Annual business tax returns on the borrower and corporate guarantors

                     Annual personal financial statements and federal tax return from all individual
                     guarantors, due upon request.

The borrower will be held responsible for any and all third party reports that may be needed for this
request.

This proposed loan structure is also subject to receipt and satisfactory review by Huntington National
Bank to following:

1. Application (attached)
2. Complete debt schedule on all entities where the guarantor has ownership interest.
3. 2013 Personal Tax Return (at least a draft) on Amar Toma
4. Schedule of all k-1 distributions for 2013
5. 2011, 2012 & 2013 federal returns, debt schedule 06/30/2014 interims on the
   following entities
   - Rayco Accessories
   - United Wireless
   - PCS Experts of Oswego
   - DPA
   - My own Planet
   - Precious Home Healthcare
   - TIG Hall Road
   - 7 Star Investments
   - TIG Holdings
   - TIG Miller
   - Amar & Sarmad Enterprises
   - Troy Real Estate Group
   - 9 & Harper Investments
   - Wyandotte Investment Group
   - A&S Eureka Inv
   - Shayota & Toma Inv

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

August 6, 2014

Page 3

This is not a commitment to lend. Lender reserves the right to request additional information, other than listed herein, that is deemed necessary to facilitate the loan closing of this transaction.

I look forward to working with you on this transaction. Please call me at 586-468-3240 if you have any questions or need clarification on any issue.

Sincerely,


Ryan W. Kroge
Vice President - Senior SBA Lender

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# B

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM



November 7, 2014

PCS Experts Inc.
Attention: Amar Toma
865 Stephenson Hwy
Troy, MI 48083

Dear Amar:

    Huntington National Bank ("Bank") is pleased to advise you that it is prepared to provide a first mortgage loan (the "Loan") subject to the terms, conditions and limitations set forth in this letter ("Commitment Letter") with the following basic terms (the "Basic Terms"):

**Co-Borrowers:** PCS Experts Inc., Amar Toma, Rayco Accessories Inc., PCS Experts of Wyandotte, Inc., PCS Experts of Marysville Inc, Eight Mile and Gratiot Wireless, Inc., PCS Experts of Winter Gardens, Inc., Nine Mile and Harper Wireless, Inc., PCS Experts of Taylor, Inc., 12 & Mound Wireless Inc., PCS Experts of White Lake, Inc., PCS Experts of Shelby NC, Inc., Holland Sylvania Wireless Inc., PCS Experts of Statesville, Inc., PCS Experts of Sebring Inc., PCS Experts of Shelby, Inc., PCS Experts of Sanford, Inc., PCS Experts of Rochester Hills, Inc., Lincoln Park Wireless, Inc , PCS Exp____ ____, ____ ____ Experts of Plymouth, Inc., PCS Experts of Pineville, Inc., M59 & Gratiot Wireless, Inc., PCS Experts of Perrysburg, Inc., PCS Experts of Oswego, Inc., M59 & Rochester Wireless, Inc., PCS Experts of Orlando, Inc., PCS Experts of Orlando #2, Inc., Maple & Crooks Wireless Inc., PCS Experts of Okeechobee, Inc., PCS Experts of Mooresville, Inc, PCS Experts of Melbourne, Inc., PCS Experts of Longwood, Inc., Market Street Wireless Inc., Meridian Wireless, Inc., ____ ____ ____ ____ ____ ____ ____ OPCS Inc., PCS Experts of

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM



Welcome.

November 7, 2014

PCS Experts Inc.
Attention: Amar Toma
865 Stephenson Hwy
Troy, MI 48083

Dear Amar:

Huntington National Bank ("Bank") is pleased to advise you that it is prepared to provide a first mortgage loan (the "Loan") subject to the terms, conditions and limitations set forth in this letter ("Commitment Letter") with the following basic terms (the "Basic Terms"):

Co-Borrowers:   PCS Experts Inc., Amar Toma, Rayco Accessories Inc., PCS Experts of Wyandotte, Inc., PCS Experts of Marysville Inc, Eight Mile and Gratiot Wireless, Inc., PCS Experts of Winter Gardens, Inc., Nine Mile and Harper Wireless, Inc., PCS Experts of Taylor, Inc., 12 & Mound Wireless Inc., PCS Experts of White Lake, Inc., PCS Experts of Shelby NC, Inc., Holland Sylvania Wireless Inc., PCS Experts of Statesville, Inc., PCS Experts of Sebring Inc., PCS Experts of Shelby, Inc., PCS Experts of Sanford, Inc., PCS Experts of Rochester Hills, Inc., Lincoln Park Wireless, Inc., PCS Experts of Richmond, Inc., PCS Experts of Plymouth, Inc., PCS Experts of Pineville, Inc.,  M59 & Gratiot Wireless, Inc., PCS Experts of Perrysburg, Inc., PCS Experts of Oswego, Inc., M59 & Rochester Wireless, Inc., PCS Experts of Orlando, Inc., PCS Experts of Orlando #2, Inc., Maple & Crooks Wireless Inc., PCS Experts of Okeechobee, Inc., PCS Experts of Mooresville, Inc., PCS Experts of Melbourne, Inc., PCS Experts of Longwood, Inc., Market Street Wireless Inc., Meridian Wireless, Inc., North Lake Wireless Inc., NPCS, Inc., OPCS Inc., PCS Experts of Belleville, Inc., PCS Experts of Bloomingdale, Inc., PCS Experts of Charlotte #2, Inc., PCS Experts of Dixie, Inc., PCS Experts of Kendel, Inc. and  Eleven & Hoover, Inc. — Co-Borrowers

Purpose of Loan:   To purchase business.

Business Location:   865 Stephenson Hwy, Troy, MI 48083.

Loan Amount:   Five Million Dollars and No Cents ($5,000,000.00).

TOMA 001614

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM

| | |
|---|---|
| Interest Rate: | The Wall Street Journal Prime Rate, as defined in the Terms and Conditions plus one and seventy-five/one hundredths percent (1.75%) per annum, adjusted quarterly. |
| Payments: | Principal and interest payments shall be made based upon an amortization period of one hundred twenty (120) months, assuming level payments, which payments shall adjust to reflect adjustments in the rate of interest being charged hereunder. The payments shall be due and payable monthly during the term of the Loan. All principal and unpaid interest shall be payable at maturity. |
| Maturity: | One Hundred Twenty (120) months after the date of closing of the Loan. |
| Packaging Fees: | At the signing of this Commitment Letter, Borrower agrees to pay Bank a non-refundable fee of $2,500.00 for packaging of the Loan (the "Loan Fee") and $7,500.00 to apply towards third-party reports (unused amount, if any, will be returned at closing). The Loan Fee shall be considered earned in full by Bank upon acceptance of this Commitment Letter. |
| Bank's Expenses: | The Borrower shall pay all costs and expenses incidental to this facility, whether or not the loan is closed. Such costs shall include fees and other out-of-pocket expenses incurred by Bank, including, without limitation, appraisal fees, environmental fees, title fees, filing fees, and reasonable attorney fees. 〜 A.T. |
| Late Charge: | In the event any required installment is not paid within ten (10) days of the due date, a penalty of five percentage points (5.0%) of the required installment shall be payable. |
| Prepayment: | Borrower may prepay principal, all or any portion of the indebtedness evidenced by the Note upon twenty-one (21) days written notification. Any partial prepayments may be applied by Bank in such manner and order as Bank shall determine. No prepayment Penalty 〜 A.T. |
| Security: | *A best lien position (behind HNB) on all business assets* of PCS Experts, Inc., a first lien position on all business assets of Rayco Accessories Inc., PCS Experts of Wyandotte, Inc., PCS Experts of Marysville Inc, Eight Mile and Gratiot Wireless, Inc., PCS Experts of Winter Gardens, Inc., Nine Mile and Harper Wireless, Inc., PCS Experts of Taylor, Inc., 12 & Mound Wireless Inc., PCS Experts of White Lake, Inc., PCS Experts of Shelby NC, Inc, Holland Sylvania Wireless Inc., PCS Experts of Statesville, Inc., PCS Experts of Sebring Inc., PCS Experts of Shelby, Inc., PCS Experts of Sanford, Inc., PCS Experts of Rochester Hills, Inc., Lincoln Park Wireless, Inc., PCS Experts of Richmond, Inc., PCS Experts of Plymouth, Inc., PCS |

2

Received for Filing Oakland County Clerk 6/29/2017 9:59 AM

Experts of Pineville, Inc., M59 & Gratiot Wireless, Inc., PCS Experts of Perrysburg, Inc., PCS Experts of Oswego, Inc., M59 & Rochester Wireless, Inc., PCS Experts of Orlando, Inc., PCS Experts of Orlando #2, Inc., Maple & Crooks Wireless Inc., PCS Experts of Okeechobee, Inc., PCS Experts of Mooresville, Inc., PCS Experts of Melbourne, Inc., PCS Experts of Longwood, Inc., Market Street Wireless Inc., Meridian Wireless, Inc., North Lake Wireless Inc., NPCS, Inc., OPCS Inc., PCS Experts of Belleville, Inc., PCS Experts of Bloomingdale, Inc., PCS Experts of Charlotte #2, Inc., PCS Experts of Dixie, Inc., PCS Experts of Kendel, Inc. and Eleven & Hoover, Inc.; *a third lien position on residential real estate* located at 53188 Pondview Dr, Shelby Township, MI 48315; *a first mortgage lien on* residential real estate located at 53194 Pondview Dr, Shelby Township, MI 48315 and all improvements and fixtures now existing and to be constructed thereon ("Property"), all as further described in the security instruments to be executed at closing.

**Assignments:**  The Loan shall be further secured by a valid first assignment of rents and leases, construction contracts, architectural contracts, and such other contracts as Bank may require.

**Life Insurance:**  The Loan shall also be secured by a valid first assignment of life insurance on the life of Amar Toma in the amount of $5,000,000.00.

**SBA Guaranty:**  This loan shall be guaranteed by the Small Business Administration ("SBA"). All loan documents and closing requirements must comply with the Loan Authorization issued by the SBA. Borrower shall be responsible for the payment of the SBA loan fee in the amount of One Hundred Thirty-Eight Thousand One Hundred Twenty-Five Dollars and No Cents ($138,125.00).

**SBA Approval:**  The effectiveness of the terms of this Commitment Letter are contingent upon the U.S. Small Business Administration's final approval to guarantee 75 percent of this Loan. *Not to be unreasonable withhild. Q&P A T.*

**Sources and Uses of Funds:**  Attached hereto as Exhibit A and incorporated herein by reference is a chart showing sources and uses of funds.

**Special Requirements:**  Attached hereto as Exhibit B and incorporated herein by reference is a Pre-Closing checklist.

TOMA 001616

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM

Adverse Change:    No material adverse change occurs with respect to the business, operations, condition (financial or otherwise), or prospects, of Borrower, any guarantor, any collateral, or with respect to any other assets of Borrower or any guarantor.

Financial Statements: Borrower agrees to provide updated business and/or personal financial statements no older than 90 days (if applicable) within one full business week of closing or disbursement.

Other Special Conditions:

UCC Search to Verify HNB in 1st lien position on all borrowing entities, excluding PCS Experts Inc. We will have a second position on PCS Experts, Inc., behind the existing HNB loan.

Acknowledged Life Insurance Assignment with completed and signed questionnaire.

Copy of Life Insurance Policy: $5,000,000 term life insurance policy on Amar Toma.

Hazard Insurance

Loan Agreement: Reporting requirements to include the following: Tax returns for all borrowers and co-borrowers due annually; Reviewed consolidated reviewed financial statements due annually; Interim consolidated compiled financial statements due quarterly; Personal financial statement due annually.

Loan Agreement: Please note that the annual review and quarterly compiled statements are to be consolidated and consolidating. Also note that the statements must include a profit and loss statement and balance sheet for each entity.

Subject to SBA 7a Guarantee including Eligibility and Compliance

Executed SBA Form 1919 - Borrower Information Form

Executed SBA Loan Agreement & Borrower Certificate

Subject to All Terms and Conditions of the SBA Loan Authorization

Receipt & Review of All Applicable & Executed Government Loan Application Documents.

Documentation of Use of Proceeds as Allocated by the SBA Approval

4

TOMA 001617

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

IRS Verification of Tax Returns/Business Financial Statements

IRS Verification of Tax Returns/Business Financial Statements

SBA Form 159-Compensation Agreement

Listing of all Collateral with Value of $5,000 or more.

Auto debit/ACH of Loan Payments Required

Evidence of Appropriate Business Licensing

Documentation of Source & Use of Equity Injection: $1,640,000 non-borrowed equity injection to be verified.

Receipt & Review of Final & Executed Purchase Agreement: Maximum purchase price of 6,500,000 for buyout of Sarmad Shayota. Purchase agreement should include all entities in which Shayota is selling his shares. Also note that there are 7 other locations with that have other owners that will also be transferring to Amar Toma. The locations and how they are transferring also must be clarified.

*Clarification?*

Third Party Valuation of Acquisition Purchase Price: Minimum value of $13,000,000 for entities reflected on the purchase agreement (excluding RE value)

Copy of Charter Documents and bylaws if necessary

Verification of Legal Name and Good Standing

Proof of loan payoff: Please provide proof that loans owed to Wolverine Banke by 12 & Mound Wireless and Eight Mile & Gratiot have been paid off. As of 6/30/14, each note had an approximate balance of $47,000.

Receipt & Review of Final & Executed Purchase Agreement: The following 7 entities have other owners that must transfer ownership to Amar Toma: PCS of Taylor ,Inc., Nine Mile & Harper Wireless, Inc., Maple & Crooks Wireless, Inc., M59 & Gratiot Wireless, Inc., M59 & Rochester Wireless, Inc., 12 & Mound Wireless, Inc., and Eight Mile & Gratiot Wireless, Inc.

5

TOMA 001618

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

Executed Franchise Agreement and Franchise Disclosure Documents

(FDD)                    Master Licensing agreement

Receipt & Review of Franchisors Certificate of Franchise Documents

Borrower will not without Lender's prior written consent consolidate
    with or merge into any other entity, or permit any other entity
    to consolidate with or merge into it.

Not a
Franchise

6

TOMA 001619

Additional Terms
and Conditions:

The proposed credit facilities shall be made pursuant to, and evidenced and secured by, a loan agreement, one or more promissory notes, contracts of guaranty, assignments of insurance, security agreements, mortgages, financing statements, subordination agreements, and such other agreements, instruments and documents as Bank and its counsel may require in their sole and absolute discretion (collectively, the "Loan Documents"). The Loan Documents shall contain such representations, warranties, covenants, events of default, remedies and general provisions that Bank and its counsel deem necessary and shall otherwise be satisfactory in form and substance to Bank and its counsel. The terms, covenants and conditions set forth herein are intended to be an outline of some of the principal provisions of the Loan Documents rather than a full and complete description or exclusive list of all terms, covenants and conditions to be contained therein.

Bank will require additional documents and information from Borrower, including but not limited to, organizational documents, proof of insurance for the collateral and title insurance with a comprehensive endorsement, a survey if the loan is secured by real estate, all as provided in Bank's current policy requirements. Bank's commitment to lend funds as specified in this letter is conditioned upon Bank's receipt, within fifteen (15) days prior to closing of the Loan, of all requested documents and information which must be in form, content and detail satisfactory to Bank. Borrower agrees to pay all the out-of-pocket expenses incurred by the Bank in connection with preparations to close the Loan. The Loan shall be closed within thirty (30) days from the date of acceptance hereof; otherwise, bank's obligations under this Commitment Letter shall terminate. Borrower may effect this Commitment Letter by returning two copies of this Commitment Letter with Borrower's acceptance endorsed thereon, together with payment of the non-refundable Commitment Fee due as set forth hereinabove. This Commitment Letter, and Bank's obligation hereunder shall terminate if this Commitment Letter shall not be so accepted by Borrower and received by Bank within two (2) days from the date hereof.

Sincerely,

HUNTINGTON NATIONAL BANK

By: _____
      Ryan Kroge, Vice President

7

TOMA 001820

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

The undersigned hereby accepts this Commitment Letter and the terms this **7** day of *November*, **14** and agree to be fully bound by such terms, conditions and limitations.

PCS Experts Inc.

By: _____

Its: _____

Rayco Accessories Inc.

By: _____

Its: _____

PCS Experts of Wyandotte Inc.

By: _____

Its: _____

PCS Experts of Marysville, Inc.

By: _____

Its: _____

Eight Mile and Gratiot Wireless, Inc.

By: _____

Its: _____

PCS Experts of Winter Gardens, Inc.

By: _____

Its: _____

8

TOMA 001621

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

Nine Mile and Harper Wireless, Inc.

By: _____

Its: _____

PCS Experts of Taylor, Inc.

By: _____

Its: _____

12 & Mound Wireless, Inc.

By: _____

Its: _____

PCS Experts of White Lake Inc.

By: _____

Its: _____

PCs Experts of Shelby NC, Inc.

By: _____

Its: _____

Holland Sylvania Wireless Inc.

By: _____

Its: _____

PCs Experts of Statesville, Inc.

By: _____

Its: _____

9

TOMA 001622

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# C

To: Morrison, Mark
Cc: Amar Toma
Subject: Re: Business Valuation- PCS Experts

It is currently being reviewed internally and came in a hair under $15MM

**Ryan W. Kroge**
Vice President, Sr. SBA-USDA Specialist
Direct: 248.302.4032
Fax: 877.763.6257

The Huntington National Bank
801 W. Big Beaver Rd. 6th Floor
MI9165
Troy, MI 48083
huntington.com

On Dec 4, 2014, at 12:52 PM, Morrison, Mark <Mark.Morrison@53.com> wrote:

> Ryan,
>
> Is the final approved Business Valuation completed for PCS Experts yet? I believe it was due 12/1/15. I
> know that was a key piece in the approval so just checking on the value. Can we get a copy to review if
> the report is completed?
>
> Thanks,
>
> **Mark Morrison**
> Vice President
> Team Lead Commercial Middle Market
> Fifth Third Bank - Eastern Michigan
> 4491 Interpark Road
> Auburn Hills, MI 48326
>
> (248) 276-7314 - Office
> (248) 377-2938 - Fax
> Mark.Morrison@53.com

This e-mail transmission contains information that is confidential and may be privileged.
It is intended only for the addressee(s) named above. If you receive this e-mail in error,
please do not read, copy or disseminate it in any manner. If you are not the intended
recipient, any disclosure, copying, distribution or use of the contents of this information
is prohibited. Please reply to the message immediately by informing the sender that the
message was misdirected. After replying, please erase it from your computer system. Your
assistance in correcting this error is appreciated.

This message and any attachments are for the designated recipient only and may contain privileged, proprietary,
or otherwise private information. If you have received it in error, please notify the sender immediately and
delete the original. Any other use of the email by you is prohibited.

2

TOMA000800

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# D

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

FW: Sprint franchise agreement

Amar,

Would Steve has to sign off/ sign a new license agreement for the amendment to the contract if Sprint agreed to make the amendment? You can see where I am going with that questions. If Steve would have too then I would not see that happening.

Thanks,

Mark

**From:** Ryan Kroge [mailto:Ryan.Kroge@huntington.com]
**Sent:** Thursday, January 08, 2015 7:04 PM
**To:** Morrison, Mark
**Cc:** Amar Toma; Joe Viviano
**Subject:** Re: Sprint franchise agreement

That language is not eligible under SBA guidelines and has been amended on other licensee agreements in the past by district representatives.

**Ryan W. Kroge**
Vice President, Sr. SBA-USDA Specialist
Direct: 248.302.4032
Fax: 877.763.6257

**The Huntington National Bank**
801 W. Big Beaver Rd. 6th Floor
MI9165
Troy, MI 48083
huntington.com

On Jan 8, 2015, at 6:59 PM, Morrison, Mark <Mark.Morrison@53.com> wrote:

I am trying to understand the risk of the current language in the contract to Huntington Bank.

Per my review PCS Experts can't have a change in control, name, etc without the approval of Sprint in advance. I would assume your loan documents will have the same language to protect Huntington Bank.

Sorry I am just trying to help resolve the item.

Mark

-----Original Message-----
From: Ryan Kroge [mailto:Ryan.Kroge@huntington.com]
Sent: Thursday, January 08, 2015 6:54 PM
To: Morrison, Mark
Cc: Amar Toma; Joe Viviano
Subject: Re: Sprint franchise agreement

It is detailed in the email I sent earlier. I know it is not a franchise agreement, which is why I referred to

TOMA000113

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# E

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

**From:** Ryan Kroge [mailto:Ryan.Kroge@huntington.com]
**Sent:** Thursday, January 08, 2015 7:17 PM
**To:** Morrison, Mark
**Cc:** Amar Toma; Joe Viviano
**Subject:** Re: Sprint franchise agreement

Then the deal doesn't happen. This is not a negotiation and was discussed prior to approval.

**Ryan W. Kroge**
Vice President, Sr. SBA-USDA Specialist
Direct: 248.302.4032
Fax: 877.763.6257

**The Huntington National Bank**
801 W. Big Beaver Rd, 6th Floor
MI9165
Troy, MI 48083
huntington.com

On Jan 8, 2015, at 7:13 PM, Morrison, Mark <Mark.Morrison@53.com> wrote:

> Amar,
>
> Would Steve has to sign off/ sign a new license agreement for the amendment to the contract if Sprint agreed to make the amendment? You can see where I am going with that questions. If Steve would have too then I would not see that happening.
>
> Thanks,

1

TOMA000945

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# F

Page 1 of 3

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

**From:** Joe Viviano [mailto:joe@vivianolaw.com]
**Sent:** Friday, January 09, 2015 5:00 PM
**To:** Scott Wolfson
**Cc:** Amar Toma
**Subject:** RE: Confirmation of inadvertent disclosure of financing source

Thank you and I want to reassure you on behalf of Amar (and with his permission and blessing) that we do not blame you for this and appreciate the way you handled it.

**Joseph E. Viviano**



48 S. Main Street, Suite 2
Mt. Clemens, Michigan 48043
ph: (586) 469-1580
direct: (586) 469-1808
fax: (586) 469-1399
**www.vivianolaw.com**

This message is intended for the use of the individual or entity to which it is addressed, and may contain information that is attorney work product, privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify this office and delete the message.

**From:** Scott Wolfson [mailto:SWolfson@wolfsonbolton.com]
**Sent:** Friday, January 09, 2015 4:59 PM
**To:** Joe Viviano; Amar Toma
**Cc:** Ryan.Kroge@huntington.com
**Subject:** RE: Confirmation of inadvertent disclosure of financing source

TOMA000115

FW: Confirmation of inadvertent disclosure of financing source                          Page 2 of 3

Joe,

Unfortunately, that is correct.

Scott A. Wolfson
**WOLFSON BOLTON** PLLC
3150 Livernois, Suite 275
Troy, Michigan 48083
Phone: (248) 247-7103
Cell: (248) 703-1281
Fax: (248) 247-7099
E-mail: swolfson@wolfsonbolton.com

# W|B WOLFSON BOLTON PLLC

www.wolfsonbolton.com

This email and any attached files contain information intended for the exclusive use of the individual or entity to whom they are addressed and may contain information that is proprietary, privileged, confidential and/or protected from disclosure under applicable law. Nothing in or related to this email, or any attached file, will be deemed to waive or diminish the protection of the attorney-client privilege or the attorney work product rule. If you are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender, by email or telephone, of any unintended recipients and delete the original message without making any copies.

We are not authorized to enter into any binding agreement on behalf of any of our clients. If this communication contains any settlement proposal, it is for discussion purposes only and does not constitute an offer on behalf of us or any of our clients, and cannot create a contract or legally binding agreement. The contents of this message are subject to client approval. All communications are subject to the terms of a prenegotiation agreement, if any. Any settlement of any matter requires the signature of an authorized representative of our client (other than Wolfson Bolton PLLC) on final definitive documents which have been approved in accordance with our client's procedures.

**From:** Joe Viviano [mailto:joe@vivianolaw.com]
**Sent:** Friday, January 09, 2015 4:57 PM
**To:** Amar Toma
**Cc:** Scott Wolfson; Ryan.Kroge@huntington.com
**Subject:** Confirmation of inadvertent disclosure of financing source

Scott,

As we just discussed, I need you to confirm that, on the date of the below message (November 17), you inadvertently disclosed to Sarmad Shayota and his attorney (David Senawi), as part of the ongoing facilitation process, that Amar Toma's financing source for the auction was Huntington Bank. Sarmad and his attorney have been aware of this fact, and it has been an open part of our discussions, since that time.

We realize this was an honest mistake and recognize that you handled the situation in a prompt and professional manner.

Can you please confirm that the above is a correct statement? I am copying the loan officer, Ryan Kroge, so that he hears directly from you on this.

Sincerely,

Joseph E. Viviano

TOMA000116

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

FW: Confirmation of inadvertent disclosure of financing source                    Page 3 of 3



48 S. Main Street, Suite 2
Mt. Clemens, Michigan 48043
ph: (586) 469-1580
direct: (586) 469-1808
fax (586) 469-1399
**www.vivianolaw.com**

This message is intended for the use of the individual or entity to which it is addressed, and may contain information that is attorney work product, privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify this office and delete the message. .

**From:** Scott Wolfson [mailto:SWolfson@wolfsonbolton.com]
**Sent:** Monday, November 17, 2014 5:22 PM
**To:** Joe Viviano
**Subject:** Can I please get two minutes of your time when you are available tonight?

Please call my mobile -- 248-703-1281.

Scott A. Wolfson
WOLFSON BOLTON PLLC
3150 Livernois, Suite 275
Troy, Michigan 48083
Phone: (248) 247-7103
Cell: (248) 703-1281
Fax: (248) 247-7099
E-mail: swolfson@wolfsonbolton.com

# W|B WOLFSON BOLTON PLLC

www.wolfsonbolton.com

This email and any attached files contain information intended for the exclusive use of the individual or entity to whom they are addressed and may contain information that is proprietary, privileged, confidential and/or protected from disclosure under applicable law. Nothing in or related to this email, or any attached file, will be deemed to waive or diminish the protection of the attorney-client privilege or the attorney work product rule. If you are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender, by email or telephone, of any unintended recipients and delete the original message without making any copies.

We are not authorized to enter into any binding agreement on behalf of any of our clients.  If this communication contains any settlement proposal it is for discussion purposes only and does not constitute an offer on behalf of us or any of our clients, and cannot create a contract or legally binding agreement. The contents of this message are subject to client approval. All communications are subject to the terms of a prenegotiation agreement, if any. Any settlement of any matter requires the signature of an authorized representative of our client (other than Wolfson Bolton PLLC) on final definitive documents which have been approved in accordance with our client's procedures.

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# G

Mark

**From:** Ryan Kroge [mailto:Ryan.Kroge@huntington.com]
**Sent:** Tuesday, January 13, 2015 6:13 AM
**To:** Morrison, Mark
**Cc:** Amar Toma; joe@vivianolaw.com
**Subject:** Re: PCS Experts, Inc. - FS

We need compiled through November. October will not get you a re approval as they will be over 90 days when we close

**Ryan W. Kroge**
Vice President, Sr. SBA-USDA Specialist
Direct: 248.302.4032
Fax: 877.763.6257

**The Huntington National Bank**
801 W. Big Beaver Rd, 6th Floor
MI9165
Troy, MI 48083
huntington.com

On Jan 13, 2015, at 6:06 AM, Morrison, Mark <Mark.Morrison@53.com> wrote:

Ryan,

Attached are the revised Combined Compiled Financial Statements from UHY for Year End 2011, 2012, 2013 and Year to Date June 30, 2014 which the financial statement information for the following locations has been removed/ excluded:

1.  Maple & Crooks Wireless (owned with Steve's Family)
2.  Nine Mile & Harper Wireless (owned with Steve's Family)
3.  NPCS (Sold)
4.  OPCS (Sold)
5.  PCS Experts of Taylor (Owned with Steve's Family)
6.  PCS Experts of Oswego (Sold)
7.  PCS Experts of Bloomingdale (Sold)
8.  PCS Experts of Arcadia (Sold)

In addition I created a Summary of Variance which outlines the changes from the original Combined Compiled Financial Statement provided by UHY by each location removed and updated the Fixed Charge Coverage Ratio. In the Fixed Charge Coverage Ratio I did not include free cash flow that will be still generated from the three (3) locations (Maple & Crooks Wireless, Nine Mile & Harper Wireless, and PCS Experts of Taylor) which are not part of the auction or the Combined Compiled Financial Statements.

UHY is planning to have the Combined Compiled Financial Statement Year to Date as of October 2014 completed by next Tuesday January 20th. In the meantime we are hoping you use this revised information and start to review internally an updated Commitment Letter minus the locations removed/ excluded. In addition if you need an updated Business Valuation please review starting that process. Sorry but with the auction moved to February 2, 2015 we need to have an updated Commitment Letter by January

2

TOMA000956

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# H

Received for Filing Oakland County Clerk 6/29/2017 9:59 AM

**From:** Ryan Kroge [mailto:Ryan.Kroge@huntington.com]
**Sent:** Tuesday, January 13, 2015 6:40 AM
**To:** Morrison, Mark
**Cc:** Amar Toma; Joe@vivianolaw.com
**Subject:** Re: PCS Experts, Inc. - FS

We will not revise unless the financials in hand are within the 90 days of closing.

**Ryan W. Kroge**
Vice President, Sr. SBA-USDA Specialist
Direct: 248.302.4032
Fax: 877.763.6257

**The Huntington National Bank**
801 W. Big Beaver Rd, 6th Floor
MI9165
Troy, MI 48083
huntington.com

On Jan 13, 2015, at 6:30 AM, Morrison, Mark <Mark.Morrison@53.com> wrote:

> Ryan,
>
> Technically we would only need October as of today but I would hope that Huntington Bank could review the revised information internally and get a feel for a revised Commitment Letter. Yes we agree that you will need the October number to finalize your updated Commitment Letter. Let me know your thoughts as this is critical for timing.
>
> Thanks,

1

TOMA000955

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# I

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

**From:** Ryan Kroge [mailto:Ryan.Kroge@huntington.com]
**Sent:** Tuesday, January 13, 2015 3:17 PM
**To:** Amar Toma
**Subject:** RE: 2013 AR Agreement SBA Loan Addend FINAL 1-12-15.docx

This is sufficient

Best Regards,

**Ryan W. Kroge**
Vice President, Sr. SBA-USDA Specialist
Direct: 248.302.4032
Fax: 877.763.6257

The Huntington National Bank
801 W. Big Beaver Rd, 6th Floor
MI9185
Troy, MI 48063
huntington.com

**From:** Amar Toma [mailto:amar@tomajg.com]
**Sent:** Tuesday, January 13, 2015 12:29 PM
**To:** Ryan Kroge
**Subject:** FW: 2013 AR Agreement SBA Loan Addend FINAL 1-12-15.docx

Ryan,

Will this work for Huntington?

1

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# J

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

**From:** Morrison, Mark [mailto:Mark.Morrison@53.com]
**Sent:** Monday, January 19, 2015 8:50 PM
**To:** 'Ryan Kroge'
**Cc:** Morrison, Mark; 'Amar Toma'; 'joe@vivianolaw.com'
**Subject:** FW: DRAFT - PCS

Ryan,

Attached are the updated Combined Compiled Financial Statements Year-To-Date October 2014 minus the eight (8) location as discussed. In addition I have updated the Debt Service Coverage cash flow template to confirm cash flow which is still strong. Within the spreadsheet I created two tabs (DSC & DSC Adjusted Distributions) since Distributions historical have been in excess of actual Corporate Taxes due/ paid. One other updated item you requested was Amar PFS which he updated and will provide you a copy tomorrow.

Please do not hesitate to call or email me with questions or concerns as you timing is critical to receive an updated Commitment Letter.

Thanks,

Mark

**From:** FeImlee, Donald [mailto:dfelmlee@uhy-us.com]
**Sent:** Monday, January 19, 2015 5:32 PM
**To:** Amar Toma; Morrison, Mark
**Cc:** Petri, Dennis
**Subject:** RE: DRAFT - PCS

HI Guys ~

1

TOMA001416

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# K

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

**From:** Morrison, Mark [mailto:Mark.Morrison@53.com]
**Sent:** Tuesday, January 20, 2015 1:32 PM
**To:** 'Ryan Kroge'
**Cc:** Amar Toma; Morrison, Mark; Joe Viviano
**Subject:** RE: PCS Experts, Inc. - FS

Ryan,

I heard that Huntington Bank will not update the Commitment Letter until Amar has a Purchase Agreement which I don't follow but that is a different conversation. In the meantime did you forward the updated financial statement that UHY provided minus the eight (8) locations discuss to update the Business Valuation knowing Amar will need an updated Business Valuation matching the actual location being purchase one-hundred (100) percent by Steve at the auction?

Just checking.

Thanks,

Mark

**From:** Ryan Kroge [mailto:Ryan.Kroge@huntington.com]
**Sent:** Thursday, January 15, 2015 9:31 AM
**To:** Morrison, Mark
**Cc:** Amar Toma
**Subject:** RE: PCS Experts, Inc. - FS

I will do it

Best Regards,

TOMA000126

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# L

FW: Court Order

Attachments: IMG_5689.JPG (1004K)

-----Original Message-----
From: Morrison, Mark [mailto:Mark.Morrison@53.com]
Sent: Wednesday, January 28, 2015 12:21 PM
To: 'Ryan Kroge'
Cc: Morrison, Mark; Amar Toma; Joe Viviano
Subject: Court Order

Ryan,

Great news today! The Judge did agree that legal transfer of ownership will happen at close of the auction.

The only item raised now from the Judge's ruling today is the maximum bid we will be entering for the purchase of Steve's ownership in the company. We now have to include the Value of the Business plus 2014 Corporate Tax Owned since the owner have not take distributions yet for 2014 Corporate Taxes owed which the winner will have control over all the corporate cash. We are not planning to over pay based on this item but now have to include Amar's portion of his 2014 Corporate Taxes owned in our bid. Example: Value of the Business is $7.5 million and Amar owes $800,000 in 2014 Corporate Taxes then we would bid $8.3 million.

Let us know if you have question on this item.

Thanks,

Mark

This e-mail transmission contains information that is confidential and may be privileged.

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM

TOMA000120

FW: Court Order

It is intended only for the addressee(s) named above. If you receive this
e-mail in error, please do not read, copy or disseminate it in any manner.
If you are not the intended recipient, any disclosure, copying,
distribution or use of the contents of this information is prohibited.
Please reply to the message immediately by informing the sender that the
message was misdirected. After replying, please erase it from your
computer system. Your assistance in correcting this error is appreciated.

1 Attached Images



Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

TOMA000121

Received for Filing Oakland County Clerk 6/29/2017 9:59 AM



Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# M

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

**From:** Ryan Kroge [mailto:Ryan.Kroge@huntington.com]
**Sent:** Monday, February 02, 2015 4:32 PM
**To:** 'Morrison, Mark'
**Cc:** Amar Toma; Joe Viviano
**Subject:** RE: Updated Commitment Letter

The updated business valuation is currently in progress with Roby Taylor and should be done this week. Once we get the final purchase agreement (or some legal documentation spelling out the transaction and dollar amount) we can go to underwriting and request an updated commitment letter.

Best Regards,

**Ryan V. Kroge**
Vice President, Sr. SBA-USDA Specialist
Direct 248.302.4032
Fax F. 771.0257

The Huntington National Bank
801 2 B g Beaver Rd, 6th Floor
MI 99
T r o f A  4083
huntg t n.com

**From:** Morrison, Mark [mailto:Mark.Morrison@53.com]
**Sent:** Monday, February 02, 2015 3:56 PM
**To:** Ryan Kroge
**Cc:** Morrison, Mark; Amar Toma; Joe Viviano
**Subject:** Updated Commitment Letter

1                                        TOMA000475

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# N

The Huntington National Bank
801 West Big Beaver Road
Troy, MI 48084
(586) 834-4027

February 10, 2015

VIA PERSONAL DELIVERY

Amar Toma
PCS Experts Inc.
865 Stephenson Hwy.
Troy, MI 48083

RE: Application for SBA Loan

Dear Mr. Toma:

This letter is to inform you that due to the continuing dispute between you and Mr. Shayota which, previously unknown to Huntington, is currently the subject of litigation, as well as your inability to obtain an executed purchase agreement for the purchase of PCS Experts Inc. and its affiliates (the "Companies"), Huntington is withdrawing its commitment issued to you on November 7, 2014.

I am truly sorry that we are not able to help you at this time. Should you and Mr. Shayota reach a final agreement for your purchase of the Companies, please feel free to contact me and we can re-start the application process.

Very truly yours,

Ryan Kroge
Vice President

Received for Filing Oakland County Clerk  6/29/2017 9:59 AM

TOMA000111

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

# Exhibit
# O

Received for Filing Oakland County Clerk   6/29/2017 9:59 AM

**From:** Ryan Kroge [mailto:Ryan.Kroge@huntington.com]
**Sent:** Tuesday, February 10, 2015 11:27 AM
**To:** amar@tomaig.com
**Subject:** Settlement agreement
**Importance:** High

Amar,

Regarding the settlement agreement, we cannot be a part of a sale where the actual sale can revert to the other party, because Huntington is not able to close within a certain time frame. Basically, Huntington cannot have an impact on the ownership of the company, which is currently what this settlement statement allows.

Best Regards,

Ryan W. Kroge
Vice President, Sr. SBA-USDA Specialist
Direct: 248.302.4032
Fax: 877.763.8257

The Huntington National Bank
801 W. Big Beaver Rd. 6th Floor
MI9165
Troy, MI 48083
huntington.com

This message and any attachments are for the designated recipient only and may contain privileged, proprietary,

1

TOMA000966

Page 1 of 1



ORIGIN ID:HLMA    (616) 235-8814
SHERRI WASSEE
THE HUNTINGTON NATIONAL BANK
40 PEARL ST NW
MI7C3
GRAND RAPIDS, MI 49423
UNITED STATES US

SHIP DATE: 10JUL17
ACTWGT: 1.00 LB
CAD: 102908152/NET3650

TO  LEGAL DEPARTMENT
HUNTINGTON NATIONAL BANK
41 SOUTH HIGH STREET
HC0323
COLUMBUS OH 43215
(614) 480-4210
PO              REF:C01000
INV             DEPT

BILL SENDER

546J1/C0C2/53C1

TRK#      7795 9396 5863
0201

XX GQQA

TUE - 11 JUL 10:30A
PRIORITY OVERNIGHT

OH-US
43215
LCK

FedEx
Express

After printing this label:

1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning  Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value, Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

AMAR TOMA, an individual,

    Plaintiff,

v.

THE HUNTINGTON NATIONAL BANK,
a national banking association, and
SCOTT WOLFFIS, an individual,

    Defendants.

Case No.:  2017-159528-CB
Hon. James M. Alexander

**ANSWER AND AFFIRMATIVE
DEFENSES OF DEFENDANTS THE
HUNTINGTON NATIONAL BANK AND
SCOTT WOLFFIS TO COMPLAINT**

---

COHEN, LERNER & RABINOVITZ, P.C.
By:  Steven Z. Cohen (P29344)
     Aaron S. Silvenis (P75889)
Counsel for Plaintiff Amar Toma
26862 Woodward, Ste. 200
Royal Oak, MI 48067
(248) 691-2200

SUMMERVILLE LAW FIRM, PLLC
By:  T.L. Summerville (P63445)
Co-counsel for Plaintiff Amar Toma
26862 Woodward Avenue, Suite 200
Royal Oak, MI 48067
(248) 537-9394

BODMAN PLC
By:  J. Adam Behrendt (P58607)
Attorneys for Defendants The Huntington
National Bank and Scott Wolffis
201 West Big Beaver Road, Suite 500
Troy, MI 48084-4160
Phone: (248) 743-6068
jbehrendt@bodmanlaw.com

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

## ANSWER

Defendants The Huntington National Bank ("Huntington") and Scott Wolffis answer plaintiff's complaint as follows:

### NATURE OF THE CASE

1.      This is an action for damages and equitable relief arising from Defendant The Huntington National Bank's ("Defendant" or "Huntington") bad faith refusal to honor a commitment letter for a $5 million loan it issued in 2014 to plaintiff Amar Toma ("Plaintiff" or "Toma").

**ANSWER:**

> **Defendants admit that plaintiff Amar Toma has filed a complaint against them, but deny that plaintiff is entitled to any relief and the remaining allegations contained in paragraph no. 1 of plaintiff's complaint because they are untrue.**

2.      Toma sought the loan as part of his efforts to purchase the interests of his former business partner, Sarmad Shayota ("Shayota"), in a company they owned together, PCS Experts, Inc.

**ANSWER:**

> **Defendants deny the allegations contained in paragraph no. 2 of plaintiff's complaint because they are untrue.**

3.      At the time he applied for the loan, Toma disclosed to Huntington that he and Shayota were involved in contentious litigation affecting PCS Experts, but had agreed to an auction where the higher bidder would acquire the other's interests.

**ANSWER:**

2

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

Defendants deny the allegations contained in paragraph no. 3 of plaintiff's complaint because they are untrue.

4.    Although the litigation and the auction were fully disclosed to Huntington, months after issuing the loan commitment letter, it reneged on its written promise, falsely claiming that the litigation between Toma and Shayota had not been previously disclosed.

ANSWER:

Defendants deny the allegations contained in paragraph no. 4 of plaintiff's complaint because they are untrue.

## PARTIES, JURISDICTION, AND VENUE

5.    Amar Toma is a resident of the Township of Shelby, County of Macomb, State of Michigan.

ANSWER:

Defendants neither admit nor deny the allegations contained in paragraph no. 5 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

6.    Huntington is a national banking association, having its principal place of business in Columbus, Ohio.

ANSWER:

Defendants admit the allegations contained in paragraph no. 6 of plaintiff's complaint.

7.    Upon information and belief, Defendant Scott Wolffis, is a resident of the Township of Shelby, County of Macomb, State of Michigan.

3

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

**ANSWER:**

Defendants admit the allegations contained in paragraph no. 7 of plaintiff's complaint.

8.      Venue is proper before this Court because all or part of the events giving rise to this action occurred in Oakland County.

**ANSWER:**

Defendants do not contest venue.

9.      Jurisdiction is proper because the amount in controversy exceeds $25,000.00, exclusive of costs and interest, and this action invokes the equity jurisdiction of the Court.

**ANSWER:**

Defendants do not contest the Court's subject matter or personal jurisdictions. Defendants deny that plaintiff is entitled to any relief against them.

FACTUAL OVERVIEW

**Toma Seeks to Acquire His Business
Partner's Interest in PCS Experts, Inc.**

10.      In February 2007, Toma and Shayota, his former business partner, formed PCS Experts, Inc. ("PCS"), a Michigan corporation, primarily for the purpose of selling cellular phone subscription plans, cellular phones and other mobile devices, and accessories for those phones and devices; Toma and Shayota were the only two shareholders of PCS.

**ANSWER:**

Defendants neither admit nor deny the allegations contained in paragraph no. 10 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

4

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

11.   PCS was the parent corporation for several subsidiaries that sold cell phones, plans, and merchandise directly to consumers.

ANSWER:

Defendants neither admit nor deny the allegations contained in paragraph no. 11 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

12.   Toma and Shayota successfully and profitably conducted business together until March 2012 when a series of incidents involving Shayota at certain PCS locations led to a breakdown of their business relationship.

ANSWER:

Defendants neither admit nor deny the allegations contained in paragraph no. 12 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

13.   In late March 2012, as tensions reached a boiling point, Toma, Shayota, and their respective attorneys met to discuss options to resolve their disputes.

ANSWER:

Defendants neither admit nor deny the allegations contained in paragraph no. 13 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

14.   Among the options considered were (i) reconciling and continuing to do business together, (ii) participating in a buy-sell arrangement with an agreed upon price at which one party could either buy the other's interest in PCS, and (iii) litigation, if all else failed.

ANSWER:

5

Detroit_14558851_2

Received for Filing Oakland County Clerk    8/17/2017 3:55 PM

Defendants neither admit nor deny the allegations contained in paragraph no. 14 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

15.    The discussions to resolve the disputes between Toma and Shayota continued for approximately two years.

ANSWER:

Defendants neither admit nor deny the allegations contained in paragraph no. 15 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

16.    Realizing that they could not continue doing business together, Toma and Shayota became involved in litigation.

ANSWER:

Defendants neither admit nor deny the allegations contained in paragraph no. 16 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

17.    In an effort to resolve their litigation, Toma and Shayota agreed to participate in an auction whereby the higher bidder would acquire the other's interest in PCS.

ANSWER:

Defendants neither admit nor deny the allegations contained in paragraph no. 17 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

6

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

18.   In the Summer of 2014, Toma, hoping to acquire Shayota's interest in PCS, contacted Huntington to inquire about securing a loan so that he could purchase Shayota's interest at the agreed upon auction.

**ANSWER:**

> **Defendants admit that plaintiff contacted Huntington about securing a loan to purchase a business. Defendants deny the remaining allegations contained in paragraph no. 18 of plaintiff's complaint because they are untrue.**

19.   Toma was directed to Ryan Kroge ("Kroge"), Vice President and Senior SBA/USDA Specialist at Huntington and explained that he needed funding so that he could purchase Shayota's interest in PCS at the auction.

**ANSWER:**

> **Defendants admit that plaintiff contacted Ryan Kroge regarding obtaining a loan to purchase a business. Defendants further admit that Mr. Kroge was formerly a "Vice President" and "SBA/USDA Specialist" while working at Huntington. Mr. Kroge is no longer employed at Huntington.  Defendants deny the remaining allegations contained in paragraph no. 19 of plaintiff's complaint because they are untrue.**

20.   On August 6, 2014, Kroge provided Toma with a preliminary term sheet (the "Term Sheet") in which Huntington proposed lending $5,000,000.00 to Toma upon the terms specified therein. (A copy of the Term Sheet is attached as Exhibit A.)

**ANSWER:**

> **Defendants admits that, on or about August 6, 2014, Huntington sent a letter to "PCS Experts Et Al." with "Guarantor: Amar Toma" acknowledging receipt of a**

7

"preliminary loan package and request to originate [a] credit facility for the borrowers listed below." The August 6, 2014 letter speaks for itself and further stated that it was "not a commitment to lend." Defendants deny the remaining allegations contained in paragraph no. 20 of plaintiff's complaint because they are untrue.

21.     As part of the loan application process, Huntington required Toma to prepare and submit a series of documents concerning the nature of the loan request, including but not limited to: a business plan; balance sheets, income statements, profit-loss statements, and other financial records for PCS; a detailed history of his business relationship with Shayota; and statements identifying the respective ownership interests Toms and Shayota held in PCS and its subsidiaries (the "Supporting Loan Documents").

**ANSWER:**

Defendants admit that the August 6, 2014 letter identifies specific documents that Huntington stated was "subject to receipt and satisfactory review by Huntington . . . ," but denies that such request included "a detailed history of his business relationship with Shayota; and statements identifying the respective ownership interests Toma and Shayota held in PCS and its subsidiaries . . ." as alleged in paragraph no. 21 of plaintiff's complaint. Defendants deny the remaining allegations contained in paragraph no. 21 of plaintiff's complaint because they are untrue.

22.     Toma provided the Supporting Loan Documents to Huntington starting in mid-August 2014.

**ANSWER:**

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

Received for Filing Oakland County Clerk  8/17/2017 3:55 PM

Defendants deny the allegations contained in paragraph no. 22 of plaintiff's complaint because they are untrue.

23.     As part and parcel of its due diligence, Huntington thoroughly analyzed the financials of PCS, as well as the overall operations of the respective entities that made up the PCS conglomerate.

ANSWER:

Defendants deny the allegations contained in paragraph no. 22 of plaintiff's complaint because they are untrue and, further, misstate what was requested, what was received, and the manner of review. By way of further response, defendants state that Huntington reviewed certain documents provided to it by PCS Experts.

24.     Not long after Toma began providing the Supporting Loan Documents, Huntington made additional requests for the balance sheets for the PCS subsidiaries and information concerning potential acquisitions and mergers/alliances that had been identified as beneficial for PCS's business operations going forward.

ANSWER:

Defendants admit that Huntington made requests for additional documentation and that such documentation speaks for itself. Defendants deny the remaining allegations contained in paragraph no. 24 of plaintiff's complaint because they are untrue.

25.     Toma continued to comply with Huntington's many requests for information.

ANSWER:

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

Huntington admits that it requested additional information. Huntington denies the remaining allegations contained in paragraph no. 25 because they are untrue.

### Huntington Issues a Commitment
### Letter to Toma For a $5 Million Loan

26.    In late October 2014, Kroge informed Toma that Huntington would be making a decision on his loan application in the near future.

**ANSWER:**

Defendants neither admit nor deny the allegations contained in paragraph no. 26 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

27.    On November 2, 2014, Kroge informed Toma by email that his application for the Loan "ha[d] been approved and should be finalized today" and that a commitment letter was expected within 24 hours.

**ANSWER:**

Defendants neither admit nor deny the allegations contained in paragraph no. 27 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

28.    On November 7, 2014, Huntington forwarded a commitment letter for the Loan to Toma.

**ANSWER:**

Defendants admit that, on or about November 7, 2014, Huntington sent "PCS Experts Inc." "Attention: Amar Toma" a "Commitment Letter." Defendants deny

10

Detroit_14558851_2

Received for Filing Oakland County Clerk 8/17/2017 3:55 PM

the remaining allegations contained in paragraph no. 28 of plaintiff's complaint because they are untrue.

29.     The commitment letter, which Kroge signed in his capacity as a vice president with Huntington, required Toma to make a payment of $10,000.00 to be used for loan fees and "third-party reports" and return a signed copy within 2 days as a condition to indicating his agreement.

ANSWER:

Defendants state that the November 7, 2014 letter states, in relevant part, that, "[a]t the signing of this Commitment Letter, Borrower agrees to pay Bank a non-refundable fee of $2,500 for packaging of the Loan (the 'Loan Fee') and $7,500 to apply towards third-party reports . . . The Loan Fee shall be earned in full by [Huntington] upon acceptance of this Commitment Letter." Mr. Kroge signed the letter in his then (now former) capacity as "Vice President." The November 7, 2014 letter further speaks for itself. Huntington denies that "Toma" was required to make these payments or that such payments were "a condition to indicating his agreement."

30.     On November 7, 2014, Toma executed the Huntington commitment documents and made the $10,000.00 payment via wire transfer/certified check. (See Exhibit B for a fully executed copy of the Commitment Letter.)

ANSWER:

On information and belief, defendants admit the allegations contained in paragraph no. 30 of plaintiff's complaint.

11

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

31.     On November 12, 2014, after having received the executed commitment documents and the $10,000.00 payment, P. J. Parsons ('Parsons'), an underwriter with Huntington, forwarded a list of closing items Huntington needed from Toma in order to consummate the Loan.

**ANSWER:**

Defendants admit that Huntington made additional requests of information and such requests speak for themselves. Defendants deny that the receipt of such items guaranteed the "consumat[ion]" of the proposed loan described in the Commitment Letter or that Huntington was otherwise obligated to lend.

32.     Parsons also directed Toma to fill out a personal financial statement as a condition to closing the Loan with Huntington.

**ANSWER:**

Defendants admit that Huntington requested that plaintiff complete a personal financial statement. Defendants deny that the provision of such a personal financial statement obligated Huntington to lend.

33.     Parsons (or Kroge) also advised Toma that Huntington would be obtaining a business valuation for PCS as part of the loan approval process.

**ANSWER:**

Defendants neither admit nor deny the allegations contained in paragraph no. 33 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

12

Detroit_14558851_2

34.     In December 2014, Toma and Mark Morrison ("Morrison"), a friend and experienced commercial loan officer for another bank, contacted Huntington regarding the status of an approved valuation for PCS Experts.

ANSWER:

> Defendants admit that plaintiff and Mr. Morrison made inquiries of Huntington regarding the proposed loan transaction, which included a business valuation of PCS Experts. Defendants neither admit nor deny the remaining allegations contained in paragraph no. 34 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

35.     Kroge, on behalf of Huntington, advised them that the valuation was "being reviewed internally and came in a hair under $15 [million]." (See Exhibit C).

ANSWER:

> Defendants neither admit nor deny the allegations contained in paragraph no. 35 of plaintiff's complaint because they lack sufficient information to determine whether they are true. By way of further response, the purported e-mail attached as Exhibit C speaks for itself.

36.     Toma continued to provide Parsons and Kroge at Huntington with the information they requested throughout the months of December 2014 and January 2015.

ANSWER:

> Defendants neither admit nor deny the allegations contained in paragraph no. 36 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

**Huntington Begins to Erect**

13

Detroit_14558851_2

Received for Filing Oakland County Clerk 8/17/2017 3:55 PM

Received for Filing Oakland County Clerk 8/17/2017 3:55 PM

### Barriers to Closing the Loan

37.     On January 8, 2015, Morrison informed Huntington that the auction had been scheduled to take place on March 30, 2015.

**ANSWER:**

**Defendants deny the allegations contained in paragraph no. 37 of plaintiff's complaint because they are untrue.**

38.     Shortly thereafter, on January 8, 2015, Huntington advised Toma of a series of "outstanding issues" that needed to be addressed before the date of the auction.

**ANSWER:**

**Defendants are uncertain as to what plaintiff means by "outstanding issues" and, as a result, deny plaintiff's allegations in paragraph no. 38 of plaintiff's complaint.**

39.     One of these issues concerned an assignment provision within a licensing agreement between PCS and Sprint.

**ANSWER:**

**Defendants admit that Huntington discussed assignment of a licensing agreement between PCS Experts and Sprint with plaintiff.**

40.     Huntington advised that assignment language needed to be modified to conform to SBA guidelines.

**ANSWER:**

**Defendants admit the allegations contained in paragraph no. 40 of plaintiff's complaint.**

Detroit_14558851_2

41.     Huntington also required Toma engage an accounting firm, UHY, to prepare PCS's 2014 year-end financial reports and amend certain historical financial statements to exclude certain PCS subsidiaries that had been sold could be excluded.

**ANSWER:**

> **Defendants admit that Huntington requested year-end and historical financial statements from the borrowers as a part of its review of the proposed loan facilities. Defendants deny the remaining allegations contained in paragraph no. 41 of plaintiff's complaint because they are untrue.**

42.     Also on January 8, 2015, in response to Huntington's concerns about the Sprint Agreement, Morrison emailed Kroge and sought clarification of Huntington's specific concern.

**ANSWER:**

> **Defendants neither admit nor deny the allegations contained in paragraph no. 42 of plaintiff's complaint because they lack sufficient information to determine whether they are true.**

43.     After a terse exchange over whether the Sprint Agreement was a franchise agreement, Morrison sought further clarification from Kroge and Huntington, writing:

> I am trying to understand the risk of the current [assignment] language in the [Sprint Agreement) to Huntington Bank. Per my review PCS Experts can't have a change in control, name, etc. without the approval of Sprint in advance. I would assume your loan documents will have the same language to protect Huntington Bank.

(See Exhibit D).

**ANSWER:**

Received for Filing Oakland County Clerk 8/17/2017 3:55 PM

15

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

Defendants neither admit nor deny the allegations contained in paragraph no. 43 of plaintiff's complaint because they lack sufficient information to determine whether they are true. By way of further response, the purported e-mail attached as Exhibit D speaks for itself.

44.      In response, Kroge insisted that the assignment language was "not eligible under SBA guidelines and has been amended on other licensee agreements in the past by district representatives." (See Exhibit D).

**ANSWER:**

Defendants neither admit nor deny the allegations contained in paragraph no. 44 of plaintiff's complaint because they lack sufficient information to determine whether they are true. By way of further response, the purported e-mail attached as Exhibit D speaks for itself.

45.      Kroge's and Huntington's insistence on altering the Sprint Agreement put Toma in a difficult position and threatened to jeopardize the deal/the auction.

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 45 of plaintiff's complaint because they are untrue.

46.      Huntington's requests essentially required Toma, within a short window of time and before the auction, to secure Sprint's approval to amend the assignment language so that Huntington would consummate the Loan, despite having earlier approved it.

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 46 of plaintiff's complaint because they are untrue.

16

Detroit_14558851_2

47.    Kroge, on behalf of Huntington, continued to employ a hardline "all-or-nothing" end game in response to follow-up questions from Toma's camp regarding how this deal could done in a flexible fashion.

**ANSWER:**

**Defendants deny the allegations contained in paragraph no. 47 of plaintiff's complaint because they are untrue.**

48.    After Morrison questioned whether the change was necessary, as it might require Shayota's agreement, which would not likely be forthcoming, Kroge insisted that Toma comply, saying: "Then the deal doesn't happen. This is not a negotiation and was discussed prior to approval." (See Exhibit E).

**ANSWER:**

**Defendants neither admit nor deny the allegations contained in paragraph no. 48 of plaintiff's complaint because they lack sufficient information to determine whether they are true. By way of further response, the purported e-mail attached as Exhibit E speaks for itself.**

49.    The next day, January 9, 2015, Joseph Viviano ("Viviano"), an attorney representing Toma at the time, informed Kroge that Toma's financing source for the auction, i.e., Huntington, had been inadvertently disclosed to Shayota and his attorney, David Senawi, in late November 2014 as part of an ongoing facilitation process between the parties. (See Exhibit F.)

**ANSWER:**

**Defendants neither admit nor deny the allegations contained in paragraph no. 49 of plaintiff's complaint because they lack sufficient information to determine**

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

whether they are true. By way of further response, the purported e-mail attached as Exhibit F speaks for itself.

50.     As the date of the auction grew closer, the extent of Huntington's demands increased while its overall commitment to financing the deal seemed to diminish.

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 50 of plaintiff's complaint because they are untrue.

51.     On January 13, 2015, Kroge informed Toma that Huntington would need compiled financials from UHY through the month of November 2014. To this end, Kroge indicated "October will not get you a reapproval as it will be over 90 days when we close." (See Exhibit G).

**ANSWER:**

Defendants neither admit nor deny the allegations contained in paragraph no. 51 of plaintiff's complaint because they lack sufficient information to determine whether they are true. By way of further response, the purported e-mail attached as Exhibit G speaks for itself.

52.     In response, Morrison, on behalf of Toma, wrote:

> Technically we would only need October as of today but I would hope that Huntington Bank could review the revised information internally and get a feel for a revised commitment letter. Yes we agree that you will need the October number to finalize your updated commitment letter. Let me know your thoughts as this is critical for timing.

(See Exhibit H).

**ANSWER:**

18

Detroit_14558851_2

Defendants neither admit nor deny the allegations contained in paragraph no. 52 of plaintiff's complaint because they lack sufficient information to determine whether they are true. By way of further response, the purported e-mail attached as Exhibit H speaks for itself.

53.     Kroge dismissed Morrison's request, indicating "We will not revise unless the financials are in hand within the 90 days of closing." (See Exhibit H).

ANSWER:

Defendants neither admit nor deny the allegations contained in paragraph no. 53 of plaintiff's complaint because they lack sufficient information to determine whether they are true. By way of further response, the purported e-mail attached as Exhibit H speaks for itself.

54.     At the same time that Huntington was demanding revised financial reports, Toma was working to, and did, resolve the assignment language issue affecting the Sprint Agreement.

ANSWER:

Defendants deny "that Huntington was demanding revised financial reports . . ." Defendants neither admit nor deny the remaining allegations contained in paragraph no. 54 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

55.     Toma and Sprint agreed to language that Kroge advised was "sufficient" for Huntington's lending purposes. (See Exhibit I).

ANSWER:

Defendants neither admit nor deny the allegations contained in paragraph no. 49 of plaintiff's complaint because they lack sufficient information to determine

19

Received for Filing Oakland County Clerk  8/17/2017 3:55 PM

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

whether they are true. By way of further response, the purported e-mail attached as Exhibit I speaks for itself.

56.    On January 14, 2015, representatives from Huntington met with Toma and Morrison to discuss the outstanding issues Huntington was now requiring as a precondition to closing the Loan.

**ANSWER:**

**Defendants admit that representatives met with Messrs. Toma and Morrison on or about January 14, 2015. Defendants deny plaintiff's characterization of that meeting and the remaining allegations contained in paragraph no. 56 of plaintiff's complaint because they are untrue.**

57.    At this point in time, Huntington requested that Toma forward updated revised financial statements to Rob Taylor of the accounting firm Taylor & Morgan, CPA, PC, so that Taylor could update Huntington's business valuation of PCS in view of eight locations that had been sold and removed from the overall business operations.

**ANSWER:**

**Defendants neither admit nor deny the allegations contained in paragraph no. 57 of plaintiff's complaint because they lack sufficient information to determine whether they are true.**

58.    On January 19, 2015, UHY forwarded the updated Combined Compiled Financial Statements Year-to-Date October 2014 to Toma and Morrison.

**ANSWER:**

Detroit_14558851_2

Received for Filing Oakland County Clerk  8/17/2017 3:55 PM

Defendants neither admit nor deny the allegations contained in paragraph no. 58 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

59.    Later that same day, Morrison emailed the updated financial statements and an "updated Debt Service Coverage cash flow template to confirm cash flow[,] which is still strong" to Kroge and asked that Kroge "call or email [him] with questions or concerns as [Kroge's] timing [was] critical to receive an updated Commitment Letter."

**ANSWER:**

Defendants neither admit nor deny the allegations contained in paragraph no. 59 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

60.    On January 20, 2015, Morrison contacted Huntington seeking assurance as to Huntington's commitment to get the deal done. (See Exhibit J).

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 60 of plaintiff's complaint because they are untrue. By way of further response, the purported e-mail attached as Exhibit J speaks for itself.

61.    Among other things, Morrison asked Kroge to confirm that he had sent the updated UHY financial reports so that the business valuation could be revised to match the assets Toma intended to purchase from Shayota at the auction. (See Exhibit K).

**ANSWER:**

Defendants neither admit nor deny the allegations contained in paragraph no. 61 of plaintiff's complaint because they lack sufficient information to determine

21

whether they are true. By way of further response, the purported e-mail attached
as Exhibit K speaks for itself.

The Court-Ordered Auction and Huntington's

Improper Acts to Avoid Closing

62.     On January 28, 2015, Morrison forwarded to Kroge a copy of an Order entered by
the Honorable James Alexander setting forth the procedures, terms and conditions of the auction.
Huntington was a recipient of the Court Order and had been previously advised of the status of
the litigation that had been pending between Shayota and Toma. (See Exhibit L).

ANSWER:

Defendants deny that Huntington "had been previously advised of the status of the
litigation that had been pending between Shayota and Toma." Defendants neither
admit nor deny the remaining allegations contained in paragraph no. 62 of
plaintiff's complaint because they lack sufficient information to determine whether
they are true. By way of further response, the purported e-mail attached as
Exhibit L speaks for itself.

63.     On January 30, 2015, Morrison and Toma learned that the auction had been
moved to Wednesday, February 11, 2015; Morrison advised Kroge of the change via a telephone
message left that same date.

ANSWER:

Defendants neither admit nor deny the allegations contained in paragraph no. 63
of plaintiff's complaint because they lack sufficient information to determine
whether they are true.

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

64.     On February 2, 2015, Morrison again advised Kroge of the auction date and requested that Huntington provide an updated commitment letter before February 11.

**ANSWER:**

   **Defendants neither admit nor deny the allegations contained in paragraph no. 64 of plaintiff's complaint because they lack sufficient information to determine whether they are true.**

65.     Late in the afternoon on February 2, 2015, Kroge advised that Huntington was in the process of completing its work for a new commitment letter:

> The updated business valuation is currently in progress with Rob[] Taylor and should be done this week. Once we get the final purchase agreement (or some legal documentation spelling out the transaction and dollar amount) we can go to underwriting and request an updated commitment letter.

(See Exhibit M).

**ANSWER:**

   **Defendants neither admit nor deny the allegations contained in paragraph no. 65 of plaintiff's complaint because they lack sufficient information to determine whether they are true. By way of further response, the purported e-mail attached as Exhibit M speaks for itself.**

66.     On February 10, 2015, one day before the auction, Huntington emailed Toma to advise that it was withdrawing its commitment:

> This letter is to inform you that due to the continuing dispute between you and Mr. Shayota which, previously unknown to Huntington, is currently the subject of litigation, as well as your inability to obtain an executed purchase agreement for the purchase of PCS Experts, Inc. and its affiliates (the "Companies"). Huntington is withdrawing its commitment issued to you November 7, 2014.

23

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

Detroit_14558851_2

Received for Filing Oakland County Clerk 8/17/2017 3:55 PM

(See·Exhibit N).

ANSWER:

> Defendants admit the allegations contained in paragraph no. 66 of plaintiff's complaint. By way of further response, defendants state that the purported e-mail attached as Exhibit N speaks for itself.

67.    Toma knew the reason Huntington cited in the February 10 email was false because he had informed Kroge about the auction and the underlying litigation in November 2014.

ANSWER:

> Defendants deny the allegations contained in paragraph no. 67 of plaintiff's complaint because they are untrue.

68.    When questioned regarding the rationale for Huntington's abrupt decision to back out a day before the auction was to take place, Kroge responded:

> Regarding the settlement agreement, we cannot be part a sale where the actual sale can revert to the other party, because Huntington is not able to close within a certain time frame. Basically, Huntington cannot have an impact on the ownership of the company, which is currently what this settlement statement allows.

(See Exhibit 0).

ANSWER:

> Defendants neither admit nor deny the allegations contained in paragraph no. 68 of plaintiff's complaint because they lack sufficient information to determine whether they are true. By way of further response, the purported e-mail attached as Exhibit O speaks for itself.

24

Detroit_14558851_2

69.     As a result of Huntington's decision to withdraw the Loan Commitment, Toma was unable to bid at the Auction and protect the value of his interest in PCS.

**ANSWER:**

**Defendants deny the allegations contained in paragraph no. 69 of plaintiff's complaint because they are untrue.**

70.     Shayota purchased Toma's interest for Seven Million Six Hundred Thousand ($7,600,000.00) Dollars, which was well below its appraised value.

**ANSWER:**

**Defendants neither admit nor deny the allegations contained in paragraph no. 70 of plaintiff's complaint because they lack sufficient information to determine whether they are true.**

**Kroge Exposes Huntington's Bad Faith**

71.     In 2015, Ryan Kroge separated from Huntington Bank.

**ANSWER:**

**Defendants deny the allegations contained in paragraph no. 71 of plaintiff's complaint because they are untrue.**

72.     Subsequently, he contacted Toma and advised that the reasons Huntington cited for not consummating the Loan were false.

**ANSWER:**

**Defendants deny the allegations contained in paragraph no. 72 of plaintiff's complaint because they are untrue.**

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

Received for Filing Oakland County Clerk  8/17/2017 3:55 PM

73.     Among other things, Kroge informed Toma that Scott Wolffis, Kroge's former supervisor, had solicited a loan application from Shayota not long after Toma had submitted his loan application.

ANSWER:

Defendants deny the allegations contained in paragraph no. 73 of plaintiff's complaint because they are untrue.

74.     Unbeknownst to Toma at the time, Shayota had submitted an application (the "Shayota Application") for a $5 million loan with Huntington for the purpose of acquiring Toma's interest in PCS Experts.

ANSWER:

Defendants admit that an application for a loan was submitted to Huntington. Defendants neither admit nor deny the remaining allegations contained in paragraph no. 74 of plaintiff's complaint because they lack sufficient information to determine whether they are true.

75.     Upon learning of the Shayota Application, Kroge confronted Wolffis and the SBA loan officer assigned to the case and advised that accepting the Shayota Application violated Huntington policy as the two parties were engaged in litigation concerning the purpose of the loan applications.

ANSWER:

Defendants deny the allegations contained in paragraph no. 75 of plaintiff's complaint because they are untrue.

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

76.     Undeterred, Wolffis told Kroge that accepting the Shayota Application did not breach Huntington policy and that he was not to have contact with the Huntington employee handling the Shayota Application.

**ANSWER:**

> **Defendants deny the allegations contained in paragraph no. 76 of plaintiff's complaint because they are untrue.**

77.     Kroge, however, understood from speaking with another Huntington employee that there was a specific policy addressing the two competing loan applications and that policy barred accepting the second application; this same employee, forwarded a copy of the policy to Kroge via email, using Kroge's Huntington email address.

**ANSWER:**

> **Defendants deny the allegations contained in paragraph no. 77 of plaintiff's complaint because they are untrue.**

78.     Kroge again confronted Wolffis about the Shayota Application and the violation of Huntington policy.

**ANSWER:**

> **Defendants deny the allegations contained in paragraph no. 78 of plaintiff's complaint because they are untrue.**

79.     Wolffis, who was aware of Toma's application as he was Kroge's supervisor and reviewed his pending loan applications, told Kroge that he should not continue to object to Huntington processing both loans because Huntington would benefit irrespective of whether Toma or Shayota won the auction by closing on a $5 million loan.

**ANSWER:**

27

Detroit_14558851_2

Received for Filing Oakland County Clerk  8/17/2017 3:55 PM

Defendants deny the allegations contained in paragraph no. 79 of plaintiff's complaint because they are untrue.

80.    Kroge, knowing that processing both loan applications violated bank policy and exposed Huntington to risk, continued to report Wolffis's decision to proceed with the Shayota Application to his superiors.

ANSWER:

Defendants deny the allegations contained in paragraph no. 80 of plaintiff's complaint because they are untrue.

81.    Eventually, after several meetings, Huntington employees, including Wolffis and Kevin Plaugher, decided that both loan applications should be canceled.

ANSWER:

Defendants deny the allegations contained in paragraph no. 81 of plaintiff's complaint because they are untrue.

82.    As Huntington had already issued a commitment letter to Toma, Plaugher instructed Kroge to find reasons that ostensibly would support canceling Toma's loan.

ANSWER:

Defendants deny the allegations contained in paragraph no. 82 of plaintiff's complaint because they are untrue.

83.    On February 10, 2015, Wolffis presented Kroge with the Cancellation Letter and demanded that he sign and then send it to Toma via electronic, regular, and certified mail; Wolffis threatened that Kroge's employment with Huntington would be terminated if he refused to follow those directions.

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 83 of plaintiff's complaint because they are untrue.

84.     Although he knew the Cancellation Letter cited false reasons for not funding Toma's loan, Kroge complied with Wolffis's orders out of fear for his employment.

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 84 of plaintiff's complaint because they are untrue.

## COUNT I-BREACH OF CONTRACT

### (Declaratory Relief)

85.     Toma incorporates the allegations of the preceding paragraphs as if fully restated here.

**ANSWER:**

Defendants restate their prior responses to plaintiff's complaint as if set forth here fully.

86.     Among other things, Huntington Agreed in the Loan Commitment that it would fund the Loan, which would be guaranteed by the U.S. Small Business Administration. (See Exhibit B).

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 86 of plaintiff's complaint because they are untrue.

Detroit_14558851_2

87.     The Loan Commitment provided that approval for the Loan was contingent upon several factors, including the "[SBA's] final approval to guarantee 75 percent of th[e] Loan." (Exhibit B, p. 3).

**ANSWER:**

> **Defendants deny the allegations contained in paragraph no. 87 of plaintiff's complaint because they are untrue. By way of further response, defendants state that Exhibit B speaks for itself.**

88.     Toma and Kroge agreed that the SBA's approval would not be unreasonably withheld.

**ANSWER:**

> **Defendants deny the allegations contained in paragraph no. 88 of plaintiff's complaint because they are untrue.**

89.     In addition, the Loan Condition was subject to "(o]ther [s]pecial [c]onditions," including the receipt and review of a final and executed purchase agreement for a "[m]aximum purchase price of[$]6,500,00" to acquire Sarmad's interest in PCS and a "third party valuation of the acquisition purchase price." (Exhibit B, p. 5).

**ANSWER:**

> **Defendants deny the allegations contained in paragraph no. 89 of plaintiff's complaint because they are untrue. By way of further response, defendants state that Exhibit B speaks for itself.**

90.     Kroge signed the Loan Commitment in his capacity as a vice president for Huntington. (Exhibit B, p. 7).

**ANSWER:**

30

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

Defendants admit the allegations contained in paragraph no. 90 of plaintiff's complaint.

91.     Toma signed on behalf of the PCS entities identified in the Loan Commitment.

ANSWER:

On information and belief, defendants admit the allegations contained in paragraph no. 91 of plaintiff's complaint.

92.     The Loan Commitment had an effective date of November 7, 2014.

ANSWER:

Defendants admit that Exhibit B to plaintiff's complaint is dated November 7, 2014. Defendants do not know what plaintiff means by "effective date" in context of Exhibit B.

93.     Toma cooperated in good faith with Huntington by disclosing the auction and litigation, participating in securing purchase agreements, and working with accountants selected by Huntington to perform business valuations.

ANSWER:

Defendants deny the allegations contained in paragraph no. 93 of plaintiff's complaint because they are untrue.

94.     Despite Toma's cooperation, on February 10, 2015, Huntington wrongfully reneged on its promise to consummate the Loan, claiming that Toma had failed to disclose the litigation and would not be able to secure a purchase agreement from Sarmad. (Exhibit N)

ANSWER:

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

Defendants deny the allegations contained in paragraph no. 94 of plaintiff's complaint because they are untrue.

95.     An actual controversy has arisen and now exists between Toma and Huntington with respect to Huntington's obligations under the Loan Commitment:

    a.     Toma contends that Huntington wrongfully and in bad faith failed to consummate the Loan.

    b.     Huntington contends that it need not have consummated the Loan for alleged failures of conditions precedent.

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 95 of plaintiff's complaint because they are untrue.

96.     As a result, Toma seeks a judicial determination respecting Huntington's obligations under the Loan Commitment as follows:

    a.     That the Loan Commitment was a binding and enforceable agreement between Toma and Huntington;

    b.     That Huntington had a contractual duty to consummate the Loan, which Huntington breached when it, in bad faith, withdrew its commitment after falsely claiming that Toma had not disclosed the existence of the Litigation and would not be able to obtain a final purchase agreement from Sarmad; and

    c.     That Huntington's breach of the Loan Commitment resulted in monetary damages to Toma in the form of lost profits that he would have earned following the acquisition of Sarmad's interest in PCS.

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 96 of plaintiff's complaint because they are untrue. Defendants further deny that plaintiff has stated a claim or that he is entitled to any relief (declaratory or otherwise) against defendants.

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

WHEREFORE, defendants respectfully request that the Court enter a no cause of action as to plaintiff's complaint, declare that he is not entitled to any relief, and grant such further relief as the Court deems appropriate including an award of costs and attorney fees.

## COUNT II- BREACH OF CONTRACT

97.     Toma incorporates the allegations of the preceding paragraphs as if fully restated here.

**ANSWER:**

**Defendants restate their prior responses to plaintiff's complaint as if set forth here fully.**

98.     The Loan Commitment was a binding and enforceable contract between Toma and Huntington.

**ANSWER:**

**Defendants deny the allegations contained in paragraph no. 98 of plaintiff's complaint because they are untrue.**

99.     Huntington breached the Loan Commitment by failing to consummate the Loan and falsely claiming that Toma had failed to inform Huntington of the litigation and would not secure a final purchase agreement from Shayota, among other things.

**ANSWER:**

**Defendants deny the allegations contained in paragraph no. 99 of plaintiff's complaint because they are untrue.**

Detroit_1455885l_2

Received for Filing Oakland County Clerk  8/17/2017 3:55 PM

100.   As a direct and proximate result of Huntington's breaches of the Loan Commitment, Toma has suffered and continues to suffer damages, including but not limited to lost income in the form of lost profits from the operation of PCS with Toma as the sole owner, exceeding $25,000.00 exclusive of costs and interest.

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 100 of plaintiff's complaint because they are untrue.

WHEREFORE, defendants respectfully request that the Court enter a no cause of action as to plaintiff's complaint and grant such further relief as the Court deems appropriate including an award of costs and attorney fees.

## COUNT III-TORTIOUS INTERFERENCE
## WITH CONTRACT
### (Defendant Wolffis Only)

101.   Toma incorporates the allegations of the preceding paragraphs as if fully restated here.

**ANSWER:**

Defendants restate their prior responses to plaintiff's complaint as if set forth here fully.

102.   The Commitment Letter was a binding contract between Huntington Bank and Toma.

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 102 of plaintiff's complaint because they are untrue.

34

Detroit_14558851_2

103.    Wolffis at all times relevant hereto was aware of the Commitment Letter and knew that Huntington was bound to comply with its terms.

**ANSWER:**

> **Defendants deny the allegations contained in paragraph no. 103 of plaintiff's complaint because they are untrue.**

104.    By soliciting and accepting the Shayota Application, Wolffis set in motion a series of events that ultimately led Huntington to wrongfully breach the Commitment Letter, by among other things causing Kroge to send the Cancellation Letter under threat of duress.

**ANSWER:**

> **Defendants deny the allegations contained in paragraph no. 104 of plaintiff's complaint because they are untrue.**

105.    Wolffis's conduct in insisting that Huntington Bank could process both loans was contrary to Huntington's policy and otherwise unethical.

**ANSWER:**

> **Defendants deny the allegations contained in paragraph no. 105 of plaintiff's complaint because they are untrue.**

106.    As a result of Wolffis's tortious conduct, Toma has suffered and continues to suffer damages, including but not limited to lost income, exceeding $25,000.00, exclusive of costs and interest.

**ANSWER:**

> **Defendants deny the allegations contained in paragraph no. 106 of plaintiff's complaint because they are untrue.**

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

Detroit_1455885l_2

Received for Filing Oakland County Clerk 8/17/2017 3:55 PM

WHEREFORE, defendants respectfully request that the Court enter a no cause of action as to plaintiff's complaint and grant such further relief as the Court deems appropriate including an award of costs and attorney fees.

## COUNT IV- TORTIOUS INTERFERENCE
## WITH BUSINESS EXPECTANCY
### (Defendant Wolffis Only)

107.    Toma incorporates the allegations of the preceding paragraphs as if fully restated here.

**ANSWER:**

Defendants restate their prior responses to plaintiff's complaint as if set forth here fully.

108.    Toma had a valid business expectancy with Huntington, i.e., a $5,000,000.00 loan, as evidenced by the Commitment Letter and his communications with Kroge among other things.

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 108 of plaintiff's complaint because they are untrue.

109.    Wolffis at all times relevant hereto was aware of the Commitment Letter, Toma's business expectancy, and that Toma had applied for the Loan so that he could purchase Shayota's interest in PCS at the auction.

**ANSWER:**

Defendants deny the allegations contained in paragraph no. 109 of plaintiff's complaint because they are untrue.

Detroit_14558851_2

110.   By soliciting and accepting the Shayota Application, Wolffis set in motion a series of events that ultimately led Huntington to end its wrongfully [sic] business relationship with Toma, by among other things causing Kroge to send the Cancellation Letter under threat of duress.

ANSWER:

     **Defendants deny the allegations contained in paragraph no. 110 of plaintiff's complaint because they are untrue.**

111.   Wolffis' s conduct in insisting that Huntington Bank could process both loans was contrary to Huntington's policy and otherwise unethical.

ANSWER:

     **Defendants deny the allegations contained in paragraph no. 111 of plaintiff's complaint because they are untrue.**

112.   As a result of Wolffis's tortious conduct, Toma has suffered and continues to suffer damages, including but not limited to lost income, exceeding $25,000.00, exclusive of costs and interest.

ANSWER:

     **Defendants deny the allegations contained in paragraph no. 112 of plaintiff's complaint because they are untrue.**

     **WHEREFORE, defendants respectfully request that the Court enter a no cause of action as to plaintiff's complaint and grant such further relief as the Court deems appropriate including an award of costs and attorney fees.**

Respectfully submitted,

Detroit_14558851_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

BODMAN PLC

By: /s/ J. Adam Behrendt
J. Adam Behrendt (P58607)
Attorneys for Defendants The Huntington National
Bank and Scott Wolffis
201 West Big Beaver Road, Suite 500
Troy, MI 48084-4160
Phone: (248) 743-6068
Email: jbehrendt@bodmanlaw.com

August 17, 2017

### **AFFIRMATIVE DEFENSES**

Defendants The Huntington National Bank ("Huntington") and Scott Wolffis rely upon the following affirmative defenses to which they demand a reply under the Michigan Court Rules:

1.     Plaintiff lacks standing to bring his claims because he is not a signatory to any agreement with The Huntington National Bank, including the November 7, 2014 letter attached to plaintiff's complaint as Exhibit B. *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 474 (2003). Accordingly, plaintiff is not the real party in interest under MCR 2.201(B). The real party in interest was PCS Experts Inc. and the various entities identified in Exhibit B, which counter-signed the letter. If a loan was to be made, plaintiff was to be a guarantor. *See* Exhibit A.

2.     Count I of plaintiff's complaint is legally flawed as a matter of law because plaintiff may not seek a claim for declaratory relief to the extent that he already has suffered an actual injury. To the extent that plaintiff already has suffered an actual injury, he cannot seek a declaratory judgment to direct his future conduct or preserve his future rights. *See, e.g., AFSCME Council 25 v State Employees' Ret Sys*, 294 Mich App 1 (2011).

3.     The November 7, 2014 letter of intent did not obligate The Huntington National Bank to enter into a loan facility with plaintiff. The November 7, 2014 letter of intent set forth

Detroit_1455853_2

Received for Filing Oakland County Clerk   8/17/2017 3:55 PM

Received for Filing Oakland County Clerk    8/17/2017 3:55 PM

various conditions precedent—including review of various information and documents and subsequent documentation to be signed by the parties to The Huntington National Bank's satisfaction—for it to be obligated to lend.

4.    Plaintiff's claims against defendants are barred under the statute of frauds, which applies equally to employees of financial institutions. MCL 566.132(2); *Huntington National Bank v Daniel J Aronoff Living Trust,* 305 Mich App 496 (2014); *see also Barclae v Zarb*, 300 Mich App 455 (2013). The November 7, 2014 letter reflects the parties' on-going negotiations and does not satisfy the statute of frauds. *Id.*

5.    Plaintiff's complaint fails to state a claim because his allegations, if true, demonstrate that he would not have been the successful bidder at the auction as the discussed loan was only for $5 million and the winning bid exceeded $7 million. Thus, plaintiff's claims are moot.

6.    Plaintiff has failed to mitigate his alleged damages.

7.    Plaintiff's claims against Scott Wolffis are not legally cognizable as a party to a contract cannot be liable for interfering with his or her own contract. *Derderian v Genesys Health Care Sys*, 263 Mich App 364 (2004). A corporate officer acting as the agent of the corporation is generally considered a party to the corporation's contract. *See e.g., Reed v Michigan Metro Girl Scout Council*, 201 Mich App 10 (1993).

8.    Plaintiff's claims of damages against The Huntington National Bank are unrecoverable against Huntington because they are wholly speculative, not legally consequential to the breach he is alleging, and were not contemplated by the parties. *See, e.g., Denha v Jacob*, 179 Mich App 545 (1989).

Detroit_14558851_2

Received for Filing Oakland County Clerk  8/17/2017 3:55 PM

9.     Plaintiff's claims of damages against defendant Scott Wolffis are unrecoverable against Mr. Wolffis because his conduct, if true, was not the actual, legal, or proximate cause of plaintiff's alleged injury.

WHEREFORE, defendants respectfully request that the Court enter a no cause of action as to plaintiff's complaint and grant such further relief as the Court deems appropriate including an award of costs and attorney fees.

Respectfully submitted,

BODMAN PLC

By: /s/ J. Adam Behrendt
J. Adam Behrendt (P58607)
Attorneys for Defendants The Huntington National
Bank and Scott Wolffis
201 West Big Beaver Road, Suite 500
Troy, MI 48084-4160
Phone: (248) 743-6068
Email: jbehrendt@bodmanlaw.com

August 17, 2017

Detroit_14558851_2

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2017, I electronically filed the foregoing papers with the Clerk of the Court using the E-filing system which will send notification of such filing and e-serve the document upon all attorneys of record.

/s/ J. Adam Behrendt  (P58607)

Received for Filing Oakland County Clerk  8/17/2017 3:55 PM

STATE OF MICHIGAN
THE CIRCUIT COURT
FOR THE COUNTY OF OAKLAND
1200 N. TELEGRAPH ROAD, PONTIAC MI 48341

CASE NO. <u>2017-159528-CB</u>   TOMA,AMAR,,_____ VS <u>HUNTINGTON NATIONAL BANK</u>

THE ABOVE CASE HAS BEEN ASSIGNED FOR <u>STAT CONF  0130PM JUDGE ALEXANDER</u>     ON <u>09-14-17</u>

YOU WILL RECEIVE NO FURTHER NOTICE. NO CONTINUANCES WILL BE GRANTED EXCEPT FOR GOOD CAUSE
AND WITH THE APPROVAL OF THE ASSIGNED JUDGE.

**HEARING/TRIAL NOTICE**

J. ADAM BEHRENDT            P58607
201 W BIG BEAVER RD STE 500
TROY              MI  48084-4160

                                    08-21-17
                             CASE MANAGEMENT OFFICE
                                248-858-0350

Received for Filing Oakland County Clerk    9/7/2017 10:53 AM

## STATE OF MICHIGAN

### IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

AMAR TOMA, an individual,

     Plaintiff,

                              Case No. 2017-159528-CB

v                                  Hon. James M. Alexander

THE HUNTINGTON NATIONAL BANK, a
national banking association, and SCOTT
WOLFFIS, an individual,

     Defendants.

---

Steven Z. Cohen (P29344)
Aaron S. Silvenis (P75889)
**COHEN, LERNER & RABINOVITZ, P.C.**
Counsel for Plaintiff
26862 Woodward Avenue, Suite 200
Royal Oak, Michigan 48067
(248) 691-2200
Fax (248) 691-2214
eileen.dehring@cohenlerner.com
aaron.silvenis@cohenlerner.com

T.L. Summerville (P63445)
**SUMMERVILLE LAW FIRM, PLLC**
Co-counsel for Plaintiff
26862 Woodward Avenue, Suite 200
Royal Oak, Michigan 48067
(248) 537-9394
Fax (248) 560-1706
tls@summervillelawfirm.com

J. Adam Behrendt (P58607)
**BODMAN PLC**
Counsel for Defendants
201 West Big Beaver Road, Suite 500
Troy, MI 48084-4160
(248) 743-6068
jbehrendt@bodmanlaw.com

---

### JOINT CASE MANAGEMENT PLAN

The parties, by their respective counsel, submit this Joint Case Management Plan,

pursuant to the Court's August 21, 2017 Notice and Order to Appear for Case Management

Conference.

Received for Filing Oakland County Clerk 9/7/2017 10:53 AM

1.     **Brief Description of the claims and defenses:**

    a.     **Plaintiff:** Plaintiff Amar Toma alleges in the Complaint that defendant

    The Huntington National Bank wrongfully and in breach of binding

    agreements failed to consummate a $5,000,000.00 commercial loan that

    would have assisted Toma in acquiring his former business partner's

    interest in PCS Experts, Inc. and becoming its sole shareholder at the time.

    Toma further alleges that defendant Scott Wolffis, an employee of

    Huntington, improperly instigated and caused Huntington to breach its

    agreements with him by, among other things, soliciting a competing loan

    application from Toma's then business partner, Sarmad (Steve) Shayota,

    and that Wolffis's actions were unethical, in bad faith, and in violation of

    existing business guidelines applicable to Huntington employees.

    Defendants' actions caused Toma damages in amounts to be determined at

    trial, but exceeding the amount in controversy requirement for this Court.

    b.     **Defendants:** Plaintiff's claims are legally and factually flawed and his

    claims against Scott Wolffis are nothing short of harassment of a

    Huntington employee. Plaintiff lacks standing to bring this lawsuit

    because it is not a signatory to any agreement with Huntington. The letter

    of intent agreement under which Huntington was considering extending a

    loan was between Huntington and certain entities and not plaintiff. The

    letter of intent reflects the parties' on-going negotiations and does not

    satisfy the statute of frauds. Moreover, plaintiff's allegations in his

    complaint demonstrate that he would not have been the successful bidder

Received for Filing Oakland County Clerk   9/7/2017 10:53 AM

at the auction even if he had obtained the loan from Huntington. Plaintiff's claims of damages are unrecoverable because they are wholly speculative, not legally consequential to the breach he is alleging and were not contemplated by the parties at the time they signed the letter of intent.

2.   **Jurisdictional basis.**

    a.   **Plaintiff:** Toma contends that the case falls within the jurisdiction of the Business Court, as it relates to the sale and purchase of a business enterprise and also arises out of a commercial loan transaction, pursuant to MCL 600.8031(1)(iv) and (2)(d).

    b.   **Defendants:** Defendants do not contest the jurisdiction but believe that plaintiff has named Mr. Wolffis in bad faith.

3.   **Venue:** The parties agree that venue is proper in Oakland County.

4.   **Amendment of Pleadings:** The parties agree that each may amend its pleadings to add claims or parties once without first seeking leave of the Court on or before the date set forth in paragraph 4.a., below. Thereafter, amendments are permitted only as provided by MCR 2.118(A).

5.   **Proposed case management dates:**

    a.   **Date for amending pleadings to add claims or parties:** November 15, 2017.

    b.   **Date for completion of discovery:**

- Plaintiff suggests: June 1, 2018.

- Defendants suggest: March 2, 2018.

3

Received for Filing Oakland County Clerk   9/7/2017 10:53 AM

    c.    **Date for disclosure of testifying expert witnesses:**

- Plaintiff: December 15, 2017.

- Defendants: December 29, 2017.

    d.    **Date for exchange of preliminary witness lists:** November 17, 2017, 2017.

    e.    **Mediation.** The parties are agreeable to early mediation/facilitation and have agreed to use Barry Howard as the facilitator, pending final confirmation from Defendants and Judge Howard.

    f.    **Case evaluation:**

- Plaintiff: Plaintiff does not believe that case evaluation would be helpful in this matter and requests the case be removed therefrom. Plaintiff agrees to private facilitation.

- Defendants: Defendants believe that case evaluation is appropriate.

    g.    **Filing of dispositive motions:**

- Plaintiff suggests: June 29, 2018.

- Defendants suggest: March 30, 2018.

    h.    **Potential trial date:**

- Plaintiff suggests: November 2018.

- Defendants suggest: June 2018.

6.    **Anticipated discovery issues that may require court intervention:** The parties do not anticipate any discovery issues that may require court intervention. The parties do agree to the entry of a protective order substantially conforming to the Court's model order.

7.    **Jury demand.** Plaintiff included a jury demand with the Complaint.

4

8.   **Estimated length of trial.** The parties anticipate a 5-day trial in this matter.

9.   **Other issues:** None.

Respectfully submitted,

**SUMMERVILLE LAW FIRM, PLLC**          **BODMAN PLC**

by:   /s/ T.L. Summerville                        by:   /s/ J. Adam Behrendt
    T.L. Summerville (P63445)                J. Adam Behrendt (P58607)
    Co-counsel for Plaintiff                    Counsel for Defendants
    26862 Woodward Avenue, Suite 200            201 West Big Beaver Road, Suite 500
    Royal Oak, Michigan 48067                   Troy, MI 48084
    (248) 537-9394                              (248) 743-6068
    Fax (248) 560-1706                          jbehrendt@bodmanlaw.com
    tls@summervillelawfirm.com


**COHEN, LERNER & RABINOVITZ, P.C.**
  /s/ Steven Z. Cohen
  Steven Z. Cohen (P29344)
  Aaron S. Silvenis (P75889)
  Counsel for Plaintiff
  26862 Woodward Avenue, Suite 200
  Royal Oak, Michigan 48067
  (248) 691-2200

Dated: September 6, 2017

Received for Filing Oakland County Clerk   9/7/2017 10:53 AM

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2017, I electronically filed the foregoing document

with the Clerk of the Court using the electronic filing system, which will send notification of

such filing to all counsel of record at their respective addresses as disclosed on the pleadings.


by:    /s/ Eileen M. Dehring

Received for Filing Oakland County Clerk    9/7/2017 10:53 AM

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

TOMA,AMAR,,
Plaintiff,                                             HON. JAMES M. ALEXANDER

vs.                                                    Case No.    2017-159528-CB

HUNTINGTON NATIONAL BANK
Defendant.

_____/

### SCHEDULING ORDER

At a session of Circuit Court held in the City of Pontiac,

County of Oakland, State of Michigan on 9/14/2017

Present: HON. JAMES M. ALEXANDER

The Court having conducted a Case Management Conference with

counsel of record:

IT IS HEREBY ORDERED AS FOLLOWS:

1.   ~~The parties are permitted to amend their pleadings as of right up to N/A.   Any amendments~~

~~after that date require an Order of the Court.~~

2.   All discovery must be completed by 3/15/2018.

3.   Plaintiff must disclose the identity of any testimonial experts by 12/31/2017 together with a

statement of the subject matter(s) to be addressed by each expert witness.

4.   Defendant must disclose the identity of any testimonial experts, together with a statement of

the subject matters(s) to be addressed by each expert witness, within 21 days of receipt of Plaintiff's

disclosure as set forth in No. 3.

          Lay                              by 1/31/2018.
5.   Witness lists must be exchanged and filed with the Court ~~at least 60 days prior to the close of~~

~~discovery~~.

6.   All Dispositive Motions must be filed ~~and heard~~ by 2/28/2018.

7. All Motions in Limine must be filed and heard no later than two weeks before trial.

8. The case is ordered into mediation / facilitation by 12/31/2017. The parties may stipulate at any time to submit the case to mediation / facilitation prior to this date. **CLIENTS WITH SETTLEMENT AUTHORITY MUST BE PRESENT AT MEDIATION/FACILITATION.**

with Barry Howard.

~~9. The case will be submitted to case evaluation on or about N/A.~~

10. A final pre-trial conference will be held on 4/19/2018 at 1:30 p.m.. **CLIENTS WITH SETTLEMENT AUTHORITY MUST BE PRESENT AT THE FINAL PRE-TRIAL CONFERENCE.**

11. The case is set for jury/~~non-jury~~ trial on 5/14/2018 at 8:30 a.m.

12. A Status Conference shall be held in chambers on 12/12/2017 at 1:30 p.m.. **CLIENTS WITH SETTLEMENT AUTHORITY MUST BE PRESENT AT THE STATUS CONFERENCE.**

13. **The parties must comply with the Business Court Case Management Protocol posted on the Oakland County website (oakgov.com/courts/businesscourt) unless otherwise ordered.**

9/14/2017

Dated: _____

/s/James M. Alexander

Judge JAMES M. ALEXANDER  AP
Oakland County Circuit Court Judge
Business Court

Received for Filing Oakland County Clerk   9/15/2017 3:30 PM

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

TOMA,AMAR,,

_____
                          Plaintiff,

V

HUNTINGTON NATIONAL BANK

_____
                          Defendant,

NO:     2017-159528-CB

HON. JAMES M. ALEXANDER

<u>ORDER</u>

**At a session of Court
held in Oakland County, Michigan
on  09/19/2017**

**THE COURT FINDS:**

The Court having held a Status Conference on September 14, 2017, hereby orders:

Huntington National Bank will indemnify Defendant Scott Wolffis who is dismissed as a defendant.

/s/James M. Alexander
_____
**HON. JAMES M. ALEXANDER**       AP
**Circuit Court Judge**

Received for Filing Oakland County Clerk  9/20/2017 9:47 AM